COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| | § | |
| MVS INTERNATIONAL CORPORATION AND MANUEL SATURNO, | § | No. 08-16-00173-CV |
| | § | Appeal from |
| Appellants, | § | |
| | § | 168th District Court |
| v. | § | of El Paso County, Texas |
| INTERNATIONAL ADVERTISING SOLUTIONS, LLC, NEXT LEVEL FIRM, LLC, RENE RASCON, | § | (TC # 2015-DCV3098) |
| | § | |
| Appellees. | § | |
| | § | |

## **O P I N I O N**

In this appeal, we deal with the ever-broadening application of TEX.CIV.PRAC.&REM.CODE ANN. § 27.001 et. seq. (West 2015), more commonly referred to as the Texas Citizens Participation Act (TCPA). This case began as a routine collections suit: a creditor sued several debtors for non-payment of a debt, as evidenced by unpaid invoices. The debtors counterclaimed, asserting that several cross-defendants conspired to falsify the invoices, and then communicated the fact of their subsequent non-payment to third-parties. The counterclaim triggered the creditors' use of the TCPA seeking to dismiss various counts of the counterclaim. While denying they improperly conspired or made the specific derogatory communications complained of, the creditors contended that the communications as alleged would implicate their rights to free speech, right of petition,

and right of association as those terms are uniquely defined by the TCPA. After it dismissed some, but not all, of the counterclaims for other reasons, the trial court decided the TCPA motion was moot. We disagree with that conclusion reverse and remand in part.

## FACTUAL SUMMARY

This suit began as an action to collect a debt. MVS International Corp. (MVS) sued International Advertising Solutions, LLC (IAS) and Next Level Firm, LLC (Next Level) for $60,115.45 allegedly owed for unpaid advertising and other services. MVS runs a radio station. IAS and Next Level are advertising agencies that buy ad time and design media campaigns on behalf of their clients.

This otherwise mundane commercial dispute took an unusual twist when IAS and Next Level, along with their principal, Rene Rascon, (collectively the Appellees) filed an Original Counterclaim and Third Party Claim. The pleading added new parties, including MVS's General Manager, Manuel Saturno. It also added Southwest University and its principals as defendants (Southwest defendants).[1] The gist of the Counterclaim's factual allegations contend that in 2014, Rascon and the Southwest defendants settled a legal dispute between themselves, but the Southwest defendants continued to harbor animosity towards Rascon. The Southwest defendants and Saturno were close friends, and allegedly developed a plan to injure the credit and business reputation of Appellees. According to the Counterclaim, the Southwest defendants paid Saturno $300,000 in exchange for MVS changing computerized invoice records to add false charges to Appellees' accounts. MVS would then sue on the unpaid invoices as evidenced by the original petition in this case. The Counterclaim further alleged that MVS and Saturno reported to the credit

---

[1] Those new defendants included Quickstudy Learning Centers, Inc. d/b/a Southwest University, and its owners, Benjamin Arriola and Yolanda Arriola.

2

bureaus that the false billings were unpaid, and published to "other public media outlets" that Appellees were "deadbeats" and advised others not to do business with them.

After deposing Rascon and serving paper discovery, MVS and Saturno responded to the Counterclaim with a series of motions. They moved to dismiss under TEX.R.CIV.P. 13 and 91a, as well as TEX.CIV.PRAC.&REM CODE ANN. § 9.011 and § 10.001 (West 2017). And pertinent to this appeal, they filed a motion on April 4, 2016, to dismiss the case under the TCPA. The TCPA motion claimed that the allegations in the Counterclaim were based on, related to, or were asserted in response to Appellants' right to free speech, right to petition and right of association.

Appellees responded by filing Defendants' Supplemental Answer and Counter Plaintiffs and Third Party Plaintiffs Amended Claims (the amended Counterclaim).[2] The amended pleading omitted some earlier factual allegations, such as the contention that the counter-defendants had reported the bad debt to the credit bureaus, or had somehow retrieved and changed filings made with the FCC. The core of the factual allegations, however, were the same: based on an agreement with the Southwest defendants and payment from them, MVS and Saturno had changed and falsified its invoices for advertising that consequently went unpaid. They then reported the bad debt along with other disparaging comments to others in the industry who stopped doing business with Appellees.

From these factual allegations, Appellees alleged these causes of action: (1) civil conspiracy; (2) breach of contract; (3) fraud; (4) interference with business relations; (5) business disparagement; (6) defamation and intentional infliction of emotional distress; (7) violation of the

---

[2] Appellants' brief contends this pleading asserts supplemental claims, leaving the original counterclaim in play. At best, Appellants claim it creates an ambiguity as to whether it is a true amended or supplemental pleading. Consequently, Appellants refer to factual allegations from the original Counterclaim. The title and body of the pleading, however, convinces us that as to the counterclaim and third party claims, the pleading is a true amendment, and we treat it as such. TEX.R.CIV.P. 65; *Mekeel v. U.S. Bank Nat'l Ass'n*, 355 S.W.3d 349, 354 (Tex.App.--El Paso 2011, pet. denied)(Rule 65 requires court to consider only the last amended pleading); *King v. Air Exp. Intern. Agency, Inc.*, 413 S.W.2d 838, 839 (Tex.Civ.App.--Houston 1967, no writ)("The law is well settled that an amended pleading completely supersedes and supplants the pleading which is amended.").

3

Deceptive Trade Act and (8) spoliation. MVS and Saturno filed a supplement to their TCPA motion to dismiss, addressing the newly added causes of action.

Appellees then filed a First Supplemental Claim for Breach of Settlement Agreement alleging that the Southwest defendants had agreed to a non-disparagement clause in their earlier settlement agreement. They claimed that the Southwest defendants breached that clause by defaming them, and accused Rascon of having stolen from the Southwest defendants. The supplemental petition further claimed that the Southwest defendants enlisted MVS and Saturno "to repeat such statements to other media outlets." The supplemental petition described MVS and Rascon as agents of the Southwest defendants for spreading the derogatory information to other media outlets.

The trial court granted MVS and Saturno's Rule 91a motion in part, dismissing Appellees' DTPA, statutory fraud, breach of FCC rules, breach of Chapter 32 of the Texas Penal Code, and spoliation claims. The trial court also dismissed the infliction of emotional distress claims made by the corporate entities IAS and Next Level. Finally, the trial court dismissed the breach of contract claims asserted against Saturno individually. The court awarded MVS and Saturno attorney's fees under their Rule 91a motion. After noting that the Rule 91a and TCPA motions were argued together, the trial court concluded that the TCPA motion was moot. MVS and Saturno then filed this interlocutory appeal. TEX.CIV.PRAC.&REM.CODE ANN. § 51.014(a)(12)(West Supp. 2016)(authorizing an appeal from an interlocutory order that "denies a motion to dismiss filed under [the TCPA]").

**CONTROLLING LAW**

The Legislature passed the TCPA to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file

4

meritorious lawsuits for demonstrable injury." TEX.CIV.PRAC.&REM.CODE ANN. § 27.002. To that end, we are to construe the act "liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b).

The Act provides a two-step process to protect the exercise of those rights. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898-99 (Tex. 2017); *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015)(orig. proceeding). Under the first step, a defendant invokes the TCPA by timely moving to dismiss a claim upon an initial showing, supported by a preponderance of the evidence, that the plaintiff's claim "is based on, relates to, or is in response to the [movant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." TEX.CIV.PRAC.&REM.CODE ANN. § 27.005(b).

Though the stated purpose of the TCPA is to protect certain constitutionally protected rights, the manner in which those rights are statutorily defined is not coextensive with constitutional jurisprudence. For instance, the TCPA defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id.* at § 27.001(3). A communication is broadly defined to include "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). A matter of public concern "includes an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id.* § 27.001(7). Applying this language, the Texas Supreme Court held that "the plain language of the Act merely limits its scope to communications involving a public subject--not communications in public form." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). The court reiterated that view in *Coleman*, holding that internal communications between company employees were protected by the Act. *Coleman*, 512 S.W.3d at 901; *see also Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191,

5

202 (Tex.App.--Austin, no pet. h.)("Very recently, however, the Texas Supreme Court in *Coleman* seems to have put to rest any notion that any constitutional connotations of 'right of association,' 'right of free speech,' or 'right to petition' should inform the meaning of the TCPA's corresponding 'exercise of' definitions . . . .").

If the defendant successfully makes a showing under the first step, then the burden shifts to the plaintiff to "establish[ ] by *clear and specific evidence a prima facie case* for each essential element of the claim in question." [Emphasis added]. *Id.* § 27.005(c). The Act does not define the term "clear and specific evidence." We therefore give the words their plain or common meaning. *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Hous. Sys.*, 255 S.W.3d 619, 633 (Tex. 2008)(use of plain or common meaning when words or phrases are not defined by statute or have not acquired a special or technical meaning). The *In re Lipsky* court described the word "clear" as meaning "unambiguous," "sure," or "free from doubt." *Id.* at 590, *citing KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 689 (Tex.App.--Houston [1st Dist.] 2013, pet. denied), *quoting* Black's Law Dictionary 268, 1434 (8th ed. 2004). It also defined the word "specific" as meaning "explicit" or "relating to a particular named thing." *Id.*; *see also Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex.App.--Austin 2015, no pet.).

The further requirement of demonstrating a "prima facie case" has a traditional legal meaning. *In re Lipsky*, 460 S.W.3d at 590. "It refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.*, *citing Simonds v. Stanolind Oil & Gas Co.,* 134 Tex. 332, 136 S.W.2d 207, 209 (1940). A prima facie case is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re E.I. DuPont de Nemours & Co.,* 136 S.W.3d 218, 223 (Tex. 2004)(per curiam), *quoting Tex. Tech*

*Univ. Health Sciences Ctr. v. Apodaca,* 876 S.W.2d 402, 407 (Tex.App.--El Paso 1994, writ denied).[3]

In deciding the TCPA motion, the court may consider the pleadings and any supporting and opposing affidavits. TEX.CIV.PRAC.&REM.CODE Ann. § 27.006(a); *see In re Lipsky*, 460 S.W.3d at 587. The pleadings and evidence should be viewed in a light favorable to the non-movant. *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80-81 (Tex.App.--Houston [1st Dist.] 2013, pet. denied), *citing Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004).

We apply the de novo standard in reviewing a trial court's ruling on a TCPA motion to dismiss. *Dallas Morning News, Inc. v. Hall*, 02-16-00371-CV, 2017 WL 2290194, at *3 (Tex.App.--Fort Worth May 25, 2017, no pet. h.); *Paulsen v. Yarrell*, 01-16-00061-CV, 2017 WL 2289129, at *5 (Tex.App.--Houston [1st Dist.] May 25, 2017, no pet. h.); *Long Canyon Phase II and III Homeowners Assn., Inc. v. Cashion*, 03-15-00498-CV, 2017 WL 875314, at *3 (Tex.App.--Austin Mar. 3, 2017, no pet.)("We review de novo whether each party carried its assigned burden."); *Campbell v. Clark*, 471 S.W.3d 615, 623 (Tex.App.--Dallas 2015, no pet.). *Herrera v. Stahl*, 441 S.W.3d 739, 741 (Tex.App.--San Antonio 2014, no pet.)(appellate court reviews each step of the TCPA analysis de novo).

## ISSUE PRESENTED

In a single issue, MVS and Saturno ask whether the trial court erred in failing to grant their TCPA motion.[4] The arguments of the parties raise several sub-issues that color how we decide

---

[3] There is a potential third step in the TCPA that is not at issue in this appeal. If the plaintiff satisfies the second step, the court should still dismiss the action if the defendant "establishes by a preponderance of the evidence each essential element of a valid defense" to the plaintiff's claim. *Id.* § 27.005(d).

[4] The statement of the issue begs a more fundamental question: did the trial court err in concluding the TCPA motion was moot. The answer to that question is yes. A moot controversy is one in which the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *Camarena v. Texas Empl. Comm'n.*, 754 S.W.2d 149, 151 (Tex. 1988). Because the TCPA motion attacked causes of action that the trial court did not dismiss under

7

each of the pled causes of action. Those questions include: (1) whether Appellees' response, and particularly an affidavit, were timely filed; (2) whether the affidavit should be struck in whole or in part based on various evidentiary objections; and (3) whether MVS and Saturno can prove a valid exercise of TCPA rights when they deny some of the very statements upon which the rights of speech, petition, and association are based. We first address these matters, and then discuss each cause of action left intact by the trial court below.

## WAS A RESPONSE TIMELY FILED?

The TCPA intends a quick resolution of a case to which it applies. To that end, a TCPA motion to dismiss must be filed not later than "the 60th day after the date of service of the legal action." TEX.CIV.PRAC.&REM.CODE ANN. § 27.003(b). A hearing on the motion must generally be set no later than the 60th day after the date of service of the motion. *Id.* at § 27.004(a). Docket conditions, or the agreement of the parties might delay the hearing, but by no more than an additional thirty days. *Id*. at § 27.004(a) and (b). The need for discovery might add an additional thirty days. *Id*. at § 27.004(c). The trial court must then rule on the motion by the thirtieth day following the hearing. *Id.* at § 27.005.

Here, a hearing was set twice, but postponed due to docket conditions. It was then set again for 2:00 p.m. on June 22, 2016, several days shy of the ninety day deadline. Because of an on-going trial, the court did not actually hear the motion until after 6:00 p.m. that day. After the time set for the hearing, but before it was actually heard, Appellees filed a response that included an eleven-page affidavit of Rascon. MVS and Saturno first claim that we should not consider the response and affidavit because it was filed after the time for the scheduled hearing.

---

the Rule 91a motion, the motion as to those issues was not moot. Given the TCPA's purpose of seeking prompt resolution of these issues, and our *de novo* standard of review, we choose to reach the merits of the TCPA motion.

Other than by analogy to the summary judgment rules, Appellants cite no authority directly supporting their position. The Texas Rules of Civil Procedure include no *general* rule for when a response should be filed in relation to a hearing. The TCPA itself has no provision that addresses when a response must be filed. The Act's compressed timeline for resolving these motions might explain the absence of a formal response deadline. In any event, had the Legislature intended a formal response deadline, such as with summary judgments, it could have included such a provision. We are not empowered to create such a rule by judicial fiat. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001)("[W]e do not write rules by opinion."); *Alvarado v. Farah Mfg. Co., Inc.*, 830 S.W.2d 911, 915 (Tex. 1992)(noting defined process for rule making). We also note that the trial court allowed Appellants an opportunity to file a written reply addressing the affidavit before it decided the motion. We therefore consider the affidavit as part of the record.

## OBJECTIONS TO THE AFFIDAVIT

Following the hearing, Appellants filed objections to numerous statements made in Rascon's affidavit. Some of those objections complained of hearsay, lack of personal knowledge, improper foundation, best evidence, speculation, and variance with deposition testimony. The trial court never expressly ruled on the objections.

On appeal, Appellants set out ten specific statements from the affidavit, along with objections, as *examples* of the problems with the affidavit. The brief then states that "the irregularities with the affidavit are too numerous to address in this appeal." Nonetheless, Appellants contend that the "overwhelming number of inadmissible statements render the entire affidavit meaningless" and Appellants assign error for the trial court not sustaining their objections. We are not aware of any authority allowing us to negate an entire affidavit because some percentage of its individual statements have been stricken. Nor are we inclined to rummage

through and rule on the voluminous body of objections made below that are not specifically addressed in the parties' appellate briefs.

A well-developed body of law governs affidavits in the summary judgment context. The cases interpret Rule 166a(f) which explicitly requires affidavits to be "made on personal knowledge," to "set forth such facts as would be admissible in evidence" and to "show affirmatively that the affiant is competent to testify to the matters stated therein." TEX.R.CIV.P. 166a(f). The rule draws a distinction between defects in form and substance. *See Dailey v. Albertson's, Inc.*, 83 S.W.3d 222, 225 (Tex.App.--El Paso 2002, no pet.). Form defects must be preserved by both an objection and ruling at the trial court, while substantive objections can be raised even on appeal. *Id.*; *Hogan v. J. Higgins Trucking, Inc.*, 197 S.W.3d 879, 883 (Tex.App.-- Dallas 2006, no pet.)(sham affidavit rule raises form objection that must be first ruled on by trial court). Some courts have applied the form/substance cases from the summary judgment context to TCPA. *Hicks v. Group & Pension Administrators, Inc.*, 473 S.W.3d 518, 535 (Tex.App.-- Corpus Christi 2015, no pet.)(holding hearsay objection waived when not ruled on below); *Schmitz v. Cox*, 01-15-00199-CV, 2015 WL 6755427, at *3 (Tex.App.--Houston [1st Dist.] Nov. 5, 2015, no pet.)(memo op.)(failure to object and obtain ruling on lack of personal knowledge objection waived complaint). The text of the TCPA, however, does not have corresponding language to Rule 166a(7) describing its affidavit requirements.

While we are not inclined to apply wholesale the summary judgment affidavit cases here, we are confident that the "clear and specific" standard in the TCPA at least requires us to reject conclusory claims made by an affiant. *See In re Lipsky,* 460 S.W.3d at 593. In rejecting "general averments" of economic loss and lost profits, the supreme court noted, "[o]pinions must be based on demonstrable facts and a reasoned basis." *Id.* Stated otherwise, the court wrote that "[b]are, baseless opinions" are not "a sufficient substitute for the clear and specific evidence required to

10

establish a prima facie case" under the Act. *Id.* at 592. The text of the TCPA itself requires that "affidavits stat[e] the facts upon which the liability or defense is based." *Id.* at § 27.006(a).[5] A statement is conclusory if it provides a conclusion but no underlying facts in support of the conclusion. *See Brown v. Brown*, 145 S.W.3d 745, 751 (Tex.App.--Dallas 2004, pet. denied); *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex.App.--Houston [14th Dist.] 2000, no pet.); *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex.App.--Houston [1st Dist.] 1997, no writ).

Affidavits must also "be based on personal knowledge, not supposition." *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 666 (Tex. 2010)(disregarding assertion of third party's intent which was not based on personal knowledge); *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008)(affidavit was legally insufficient when it failed to show how affiant could have had knowledge of events in the 1840s); *Radio Station KSCS v. Jennings*, 750 S.W.2d 760, 761 (Tex. 1988)(member of general public who described inter-workings of radio station and music industry was not shown to have personal knowledge of the same, and his affidavit could not defeat summary judgment); *Valenzuela v. State & Cnty. Mut. Fire Ins. Co.,* 317 S.W.3d 550, 553 (Tex.App.-Houston [14th Dist.] 2010, no pet.)(mere recitation that affidavit is based on personal knowledge is inadequate if affidavit does not positively show basis for the knowledge). Even were the summary judgment rules to apply, this court has held that "a lack of personal knowledge, reflected in the affiant's testimony itself and not just as the lack of a formal recitation, is a defect of substance that may be raised for the first time on appeal." *Dailey*, 83 S.W.3d at 226.

Consequently, we will accept only those portions of the affidavit that make assertions of fact, or state a conclusion arrived at upon a reasoned basis. We will also limit our consideration

---

[5] The Government Code provides a general definition for an affidavit "unless a different meaning is apparent from the context of the statute in which the word appears." TEX.GOV'T CODE ANN. § 312.011 (West 2013). It similarly requires an "affidavit" to be "a statement in writing of *a fact or facts* signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office." [Emphasis added]. *Id.*

to those statements where some basis is shown establishing Rascon's personal knowledge of the factual events described.[6] We discuss specific statements from the affidavit in connection with each pleaded claim.

## Must Appellants Admit to the Alleged Statements to Prove They Exercised TCPA Protected Rights?

Appellees also contend that MVS and Saturno cannot prove they exercised protected rights under the TCPA when they simultaneously deny that the protected speech, association, or petition activity ever occurred. That view gained acceptance in a series of cases beginning with *Pickens v. Cordia*, 433 S.W.3d 179, 188 (Tex.App.--Dallas 2014, no pet.). One claim in *Pickens* was based on a defamatory email. *Id.* at 187-88. The defendant affirmatively denied sending the email. The court held that because the defendant denied sending the email, there could be no evidence that the lawsuit was related to the defendant's exercise of free speech rights, and the TCPA did not apply. *Id.* at 188.

The Dallas Court of Appeals extended the holding further in *Tatum v. Hersh*, where the defendant admitted to participating in a conversation generally, but denied making the specific statement claimed to be the basis of an intentional infliction of emotional distress claim. *Tatum v. Hersh*, 493 S.W.3d 675, 676-77 (Tex.App.--Dallas 2015), *rev'd*, 2017 WL 2839873 (Tex. June 30, 2017). Appellees argued this same position below and in their brief on appeal. After the briefing was completed, however, the Texas Supreme Court reversed the holding in *Hersh* and disapproved of the earlier *Pickens* holding. 2017 WL 2839873 *at 4. Accordingly, Appellants may rely on the Appellees' pled allegations to determine whether rights were exercised, while

---

[6] The affidavit contains several inflammatory assertions, such as suggesting the invoices may have been part of a "money laundering" scheme. We ignore those, as we do the statements that do no more than parrot the elements of the pleaded causes of action. Some factual assertions are also so unclear as to lack any clear meaning:

> I was told that, when getting less favorable terms from Televisa, that they hoped that if I could steal $50,000 from MVS, they hoped that I could steal $100,000 from them. Meaning that I would generate more revenue to steal from. Televisa refused to put any funding into the project.

simultaneously denying the amended Counterclaims' factual allegations. With these preliminary matters out of the way, we turn to each of the causes of action.

## CONSPIRACY

Appellees asserted a civil conspiracy claiming that MVS, Saturno, and the Southwest defendants "planned to ruin the reputation and to cause the financial ruin of [Appellees]." To that end, they "had a meeting of the minds on the object or course of action." The allegations incorporate the general factual statement, which describes the altered invoices, and subsequent derogatory statements made to third-party media outlets. The allegation then claims, "MVS and Saturno committed one or more unlawful, overt acts through violations of the Chapter 32 of the Texas Penal Code." The petition does not allege a specific Penal Code provision, but at least two are potentially implicated by a claim of altering an invoice for an improper purpose. TEX.PENAL CODE ANN. § 32.21(b)(West 2016)("A person commits an offense if he forges a writing with intent to defraud or harm another."); TEX. PENAL CODE ANN. § 32.47(a)(West 2016)("A person commits an offense if, with intent to defraud or harm another, he . . . alters, substitutes, or otherwise impairs the verity, legibility, or availability of a writing, other than a governmental record.").

### Does the TCPA Apply?

MVS and Saturno urge that several TCPA rights are implicated in this allegation. We focus on only one, the right of free speech. The end-point of the conspiracy was Appellants' communication to third parties that Appellees did not pay their bills and were deadbeats. Under the TCPA, one exercises a right of free speech by making a communication in connection with a matter of public concern. TEX.CIV.PRAC.&REM.CODE ANN. § 27.001(3). A public concern can include "a good, product or service in the marketplace." *Id.* at § 27.001(7)(E). Appellees sell a service, namely providing advertising for its customers through media outlets, such as MVS. By allegedly informing other media outlets that Appellees do not pay their accounts, Appellants made

13

a communication "in connection with" a "service" in the relevant marketplace. *See Harwood v. Gilroy*, 04-16-00652-CV, 2017 WL 2791321, at *3 (Tex.App.--San Antonio June 28, 2017, no pet. h.)(alleged derogatory statements about ability of wildlife purveyor to safely transport animals and conduct business fell within right of free speech component of TCPA).

Few would doubt an end consumer's right to communicate about the quality (or lack thereof) of businesses in the marketplace. *See Better Business Bureau of Metropolitan Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353-54 (Tex.App.--Houston [1st Dist.] 2013, pet. denied) (exercise of the right of free speech as contemplated by the TCPA includes a person's right to communicate reviews or evaluations of services in the marketplace). Conversely, businesses have a corresponding right to communicate between themselves about customers, or potential customers. Otherwise, a bank could never inform other financial institutions that a putative borrower chronically defaults on loans, or a merchant could never warn other stores of serial shoplifters. To be sure, the information provided must be truthful, but this free flow of accurate information is essential to an efficient marketplace. Stripping away the falsity component of the allegation, Appellants here have done no more than warn other media outlets about potential customers who (allegedly) do not pay their accounts.

Appellants also urge that their communications in forming the alleged conspiracy are protected by the right of association. The TCPA defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." TEX.CIV.PRAC.&REM.CODE ANN. § 27.001(2). Appellees claim that there must be a "public purpose" for any associational right, citing the court of appeals opinion in *ExxonMobil Pipeline Co. v. Coleman*, 464 S.W.3d 841, 848 (Tex.App.--Dallas 2015), *rev'd,* 512 S.W.3d 895 (Tex. 2017). Unlike the definition of free speech, an associational communication is not expressly conditioned on a "public purpose." *Id*. As the statute is literally

14

written, the common purpose for the association might be something improper, such as that alleged here--to injure Appellees in retribution for some past vendetta. Just as the Texas Supreme Court declined to reach this issue in *Coleman*, we also decline to decide whether associational rights reach that far. *Coleman*, 512 S.W.3d at 903 ("Accordingly, we express no opinion on whether the challenged communications were made in the exercise of the right of association under the TCPA."). We only note the anomalous result this argument portends. Participants to a criminal conspiracy could require a plaintiff suing them to make a clear and specific showing of a prima facie case in as few as sixty days, and failing that, obtain a dismissal with prejudice. *Cf. Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191 (Tex.App.--Austin 2017, pet. filed) (finding TCPA triggered by associational rights in former employees sharing trade secrets with new employer, and luring additional employees to change employers). Conversely, a single defendant, accused of much less culpable conduct, might have to engage in years of discovery before seeking vindication.

Appellees also urge that the "commercial speech" exemption from TCPA applies, thus making any claim of TCPA protected rights moot. That exemption provides:

> (b) This chapter does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

TEX.CIV.PRAC.&REM.CODE ANN. § 27.010(b). The burden of proving the applicability of an exemption under Section 27.010 is shouldered by the party asserting it. *See Miller Weisbrod, L.L.P. v. Llamas-Soforo*, 511 S.W.3d 181, 189 (Tex.App.--El Paso 2014, no pet.); *Pena v. Perel*, 417 S.W.3d 552, 555 (Tex.App.--El Paso 2013, no pet.); *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 89 (Tex.App.--Houston [1st Dist.] 2013, pet. denied).

15

With one exception, Appellees have not carried their burden of showing that the exemption applies. Rascon's affidavit claims that Appellants made derogatory statements to Televisa, Telemundo, KTSM, and one of his clients, Edwards Homes. His deposition additionally mentions two magazines. While Rascon repeats the substance of what was told to these entities, he does not state, nor establish any basis for him to have known, the context of how the statements were made to Telemundo, KTSM, or Edwards Homes or the magazines. Consequently, he cannot show the statements were made a part of Appellants' sale of goods or services, or that the recipients were "actual or potential buyer[s] or customer[s],"--a necessary predicate for the commercial speech exception to apply. *See John Moore Services, Inc.*, 441 S.W.3d at 354 (Bureau rating of company was not part of its own efforts to sell memberships, thus the commercial speech exemption did not apply).

Rascon's affidavit and his deposition testimony that Appellants attached to their TCPA motion present a somewhat different case for Televisa. MVS also promotes large events, and solicits other media outlets for promotional opportunities. The Southwest defendants intended to sponsor a concert in El Paso. Rascon was in negotiations to establish a Televisa presence in El Paso. The concert provided an opportunity to launch that business. His affidavit states that Appellants told a Televisa director that the Southwest defendants would not do business with Rascon, that he had a very bad reputation, and owed them money. Rascon then avers that he was not able to close the deal that he wanted with Televisa in El Paso, and the concert was broadcast only in Mexico. His deposition testimony is more detailed:

> And then I tried to get a job. I was trying to get this job at Tele- --Televisa. And I get this phone call from Televisa letting me know that I almost possibly [sic] was not going to be able to get that job. (In English) And I say, 'Why?' And they asked me for -- (In Spanish) I said, 'Why?' And they asked me for an appointment. I went to Juarez, with the general direct- --d- --director general. His name is Eugenio Sambrano. And he asked, 'Rene, what problem are -- are you having with MVS?' And I told him, 'None.' And he told me, 'Yes, you do. The director of MVS just came.' And I asked, 'What did he say?' He said, 'He came here for two things.

16

Number one, he came as a goodwill sign to meet director to director, and to offer that the Exa concert be televised,' which has never happened. And the Televisa director told him that that was a very good idea. We just hired somebody who's going to be in charge of El Paso. And he said, 'That's the second reason I'm here.' And he told him, 'Why?' And he said, 'We have worked with Rene Rascon. We have some lawsuits, legal problems, and Southwest University does not want to work with him.'

.    .    .

'We heard that Rene is going to be Televisa's manager for El Paso, and if the concert is going to take place in El Paso, the way it's going to, we don't want to work with Rene. We need to work directly with you, because Rene has a very bad reputation in El Paso. And we have some pending lawsuits and he owes us money.' And that's the reason why they almost did not hire me.

With regard to this single transaction, Appellants have presented unrebutted evidence that the derogatory statements were made as a part of Appellants' own business presentation to promote the Exa concert, and communicated to an actual or potential buyer of Appellants' promotional services. Because this one single instance meets the commercial speech exception, the TCPA does not apply to the conspiracy count germane to the Televisa communication and promotion of the Exa concert. Conversely, the commercial speech exception does apply to any claim based on dealings with Telemundo, KTSM, Edwards Homes, or other unnamed media outlets to whom the communications may have been made.

### Is There Clear and Specific Evidence of a Prima Facie Case?

Having found the TCPA applies to most of the conspiracy allegations, Appellees carry the burden to clearly and specifically demonstrate a prima facie case. An action for civil conspiracy has five elements: (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). An actionable civil conspiracy requires specific intent to agree to accomplish something

17

unlawful or to accomplish something lawful by unlawful means. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). This necessarily requires a meeting of the minds on the object or course of action. *Tri*, 162 S.W.3d at 556, *citing Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). The conspiring parties must be aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement. *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996); *see Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968).

We conclude that Appellees have failed to make a clear and specific showing that there was a meeting of the minds between Appellants on one hand, and the Southwest defendants on the other, to engage in the conduct described here. Rascon's affidavit offers six reasons to support the existence of the conspiracy claim: (1) the Southwest defendants' animosity towards him; (2) the $300,000 payment; (3) the sharing of confidential information protected by the earlier settlement agreement; (4) the alleged disparaging statements made to others; (5) the timing of when the invoices were changed; and (6) the fact that Appellees lost business. Although circumstantial evidence may be a properly considered in response to a TCPA motion, *In re Lipsky*, 460 S.W.3d at 591, the circumstantial evidence here is far from clear and specific. Rascon's affidavit might establish a possible motive on the part of the Southwest defendants, but motive does not prove that anyone acted on it. Rascon presented some evidence that Southwest paid Saturno or MVS a sum of money, but he presented no evidence for the money's purpose. MVS does not deny it has a business relationship with Southwestern, and it would hardly be surprising for a university to pay for advertising in local media.[7] Rascon's claim that confidential information was shared is

---

[7] Rascon's deposition testimony negates his basis for knowing what the payment was for:

> [APPELLANT'S COUNSEL]: You understand there's a big difference between Southwest University investing money or doing some agreement or some contract with MVS and Manuel Saturno personally receiving $300,000. You understand there's a big difference between those two events.

.     .     .

18

conclusory, and he does not explain how it proves the existence of the agreement alleged here. Even were we to accept that Rascon's affidavit substantiates that Appellants said unflattering things about Appellees, that hardly shows that the conduct was part of an agreed course of action with the Southwest defendants. Nor does Rascon develop with any specificity a time line of events that would allow a fact finder to draw an inference of the agreement he alleges. He does not explain how the mere fact of his lost business proves the conspiracy. We also note the logical implausibility of a scheme built around falsifying invoices for advertising that was never aired, when Appellees claim documentary proof of what was aired resides on tapes maintained by Appellants, and on documents provided to the FCC.

We conclude that the trial court should have granted the TCPA motion as it relates to the civil conspiracy claim (other than as to Televisa) and remand that claim for entry of an order dismissing that claim.

## BREACH OF CONTRACT

The breach of contract claim, after incorporating the general factual allegations, makes the following substantive allegations:

- Appellees entered into a contract with MVS for the placing of advertising for Appellees' clients; Appellees fully performed under the terms of the agreements.

- MVS breached the contracts "by failing to air the spots as ordered, by either failing to air the spots at any time or by airing the spots at a time when there was no listening audience."

- MVS breached the contracts "by charging a fee for the spots that had not been aired or had aired at a time when there was no listening audience."

---

You agree with me there's a big difference between those two things.
[RASCON]: Yes.
[APPELLANT'S COUNSEL]: Which one are you saying happened?
[RASCON]: I cannot know.
[APPELLANT'S COUNSEL]: Okay.
[RASCON]: I can only know the consequences of what happened.

19

- MVS breached the contract "by failing to apply payments and offsets to the invoices submitted to IAS and Next Level. MVS "changed invoices to inflate the number of spots aired and change credits to the invoices and then demand payment" on the same.

The amended Counterclaim alleges that because of these breaches, Appellees suffered economic damages.[8]

We conclude that the TCPA does not apply to the breach of contract claim. The specific allegations do not turn on communications made between MVS and any other entity. Moreover, the commercial speech exemption would apply here because any statements were made in direct furtherance of MVS's business of selling advertising time (and services) to its own end customer. Appellants have failed to carry their burden that the TCPA applies to the breach of contract claim.

## FRAUD

Appellees' fraud allegation, after incorporating the general factual statement, asserts that Appellants "made numerous material representations or omissions" to Appellees to induce them into placing orders for advertising. The specific representations included: an accurate rate would be charged; the spots ordered would be aired; the spots would be aired to a listening audience; the invoices would reflect the accurate rate; the actual spots aired; and that documentation would be available to prove that spots were aired. Appellees further allege the representations were false and Appellant knew them to be false, or made them recklessly without any knowledge of the truth and as positive assertions. Finally, Appellees allege reliance and damages from the representations.

---

[8] The breach of contract claim also contains several statements that were necessarily disposed of by the trial court's Rule 91a order, or simply do not belong. For instance, one sentence reads "Such conduct constitutes fraud as set forth more specifically below." That allegation does nothing more than presage a later allegation of fraud in the amended Counterclaim. Another allegation states that changing the invoices was a criminal act making the contract illegal. The trial court already disposed of any claim based on the alleged illegality, and whether the asserted illegality is a defense to the breach of contract claim-- something we do not decide-- that issue would be raised as a defense, and not included within a claim for affirmative relief. The same is true of the reference to the spoliation allegation contained in this portion of the pleading. A further assertion that the FCC could take away MVS's broadcasting license has no place in any portion of the pleadings; it appears to have been added for nothing more than its *ad terrorem* effect.

20

## Does the TCPA Apply?

For much the same reason as we explain with the breach of contract claim, the majority of the fraud allegations relate to direct dealings between Appellant and Appellees over Appellees' account and the terms of the advertising services that would be provided. Without any reference to the merits of that claim, Appellees have shown it to be covered by the commercial speech exception, and thus the TCPA would not apply. The sole exception is the statement in the fraud section of the Counterclaim that states:

> [Appellants] as part of the conspiracy to commit fraud then used the fraudulent invoices to damage the reputation of [Appellees] to third parties.

This sentence, to the extent that it attempts to state a separate claim, incorporates the conspiracy count that we have previously addressed. To that extent, this allegation in the fraud count should be struck on remand.

## INTERFERENCE WITH BUSINESS RELATIONS

The amended Counterclaim alleges that the Appellants and the Southwest defendants, by engaging in the conduct described in the general fact statement, "disseminated, or caused to be disseminated, false statements in furtherance of their fraud and in doing so, engaged in conduct unlawfully interfering in the business relations" of Appellees. According to the amended Counterclaim:

- Appellants "knew that there was a reasonable probability that [Appellees] would have entered into a business relationship with third parties";

- Appellants "either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of their false statements . . . ";

- Appellants' conduct was independently tortuous or unlawful in that the statements were false and made in furtherance of their fraud and were based upon invoices changed in violation of Chapter 32 of the Texas Penal Code;

21

- The interference proximately caused injury to Appellees "in that their business with potential clients decreased substantially, their relationships with third parties were terminated or substantially harmed";

- Appellees suffered actual injury.

## Does the TCPA Apply?

We conclude that the business interference claim falls within the TCPA. An essential allegation in the claim is a communication by Appellants to third parties about the Appellees' fidelity in paying bills, which implicates the exercise of free speech. The amended Counterclaim also adds this one additional statement: "Such conduct was done knowingly and intentionally with the intention that not only this Court, but that the public would rely upon such false representations." While not entirely clear, this allegation potentially reaches back to a claim made in the original counterclaim (as explained by discovery responses) that the filing of the Appellants' lawsuit to collect the debt was actionable because credit bureaus or others might be alerted to the public filing. Appellants' filing of the lawsuit, however, is additionally protected by the right to petition as defined by the TCPA. TEX.CIV.PRAC.&REM.CODE ANN. § 27.001(4)(A)(i)("'Exercise of the right to petition' means . . . a communication in or pertaining to: . . . a judicial proceeding."); s*ee also Long Canyon Phase II and III Homeowners Assn., Inc. v. Cashion*, 517 S.W.3d 212, 221 (Tex.App.--Austin 2017, no pet.)(serving demand letter fell within the definition of the right to petition as defined by the TCPA); *Serafine v. Blunt*, 466 S.W.3d 352, 356 (Tex.App.--Austin 2015, no pet.)(filing of lawsuit and lis pendens is protected right of petition requiring dismissal of counterclaim to the extent it alleged that as cause of action).

## Is There Clear and Specific Evidence of a Prima Facie Case?

To prevail on a claim for tortious interference with prospective business relations, a plaintiff must establish that (1) a reasonable probability existed that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a

22

conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013); *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).

Rascon's affidavit generally describes that IAS and Next Level lost business from the statements made to third party advertisers. Because tortious interference requires proof of interference with a specific contract, we cannot credit some general loss of business as actionable. *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex.App.--Houston [14th Dist.] 2011, pet. denied)(general drop-off of advertisers did not show interference with existing contracts); *John Moore Serv.*, 441 S.W.3d at 361 (grading business with an "F" rating along with claim of subsequent loss of business was inadequate to show damages for interference with prospective business).

Rascon's affidavit does specifically describe communications with Telemundo, KTSM, and one of his clients, Edwards Homes.[9] The affidavit and petition, however, fail to present clear and specific evidence of any prospective business relationship with those entities. There is no specific mention of any transaction between Appellees and KTSM and Telemundo. From the affidavit, we additionally cannot tell if Appellees ever did business with these entities, or if so, what the nature of that business was, what was proposed for the future, or the likelihood of future business. The closest Appellees come is the claim that a current customer, Edwards Homes, stopped doing business with Appellees when it was told that Rascon had failed to apply a payment

---

[9] We have already determined that the commercial speech exception applied to the other specific transaction involving the AXA concert that Televisa broadcast in Mexico, but not in El Paso.

towards Edwards Homes' account with MVS. Before that, Edwards Homes had transacted four to five thousand dollars of business per month.[10]

Nonetheless, the affidavit lacks the sort of clear and specific details outlined by prior TCPA case law. In *Serafine v. Blunt* a property owner claimed that a neighbor interfered with a prospective contract between the property owner and a drainage contractor. *Id.* at 361-62. While the property owner's affidavit identified the contractor and the scope of work proposed, it failed to "provide detail about the specific terms of the contract or attach to his affidavit any contract or other document memorializing any agreement . . . about the scope of work to be done." *Id.* Likewise, in *John Moore Servs.,* a contractor claimed that an "F" rating from the BBB damaged its business with some existing customers, who demanded refunds. The court nonetheless found the contractor "offered no clear and specific evidence of any of these contracts or their terms." 441 S.W.3d at 361. And in *All Am. Tel., Inc. v. USLD Commc'ns, Inc.,* 291 S.W.3d 518, 532 (Tex.App.--Fort Worth 2009, pet. denied), a long distance provider claimed that the withholding of business records damaged its on-going relationship with over one million customer contracts. The affidavit in support of that claim, however, neither provided detail about specific terms of contracts nor attached any contract to serve as exemplar. *Id.* Similarly, on this record, we have no specific details or documentation of the existing agreement between Appellees and Edwards Homes. Rascon provides no explanation for how he knew what statements were made, to whom they were made, or even when they were made. The claim that Edwards ceased doing business because of the alleged statement is also conclusory.

---

[10] Appellees did not plead a claim for interference with an existing contract, which has its own distinct elements. *See Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000).

Thus, Rascon's affidavit fails to establish a prima facie case for an essential element of Appellees' claim and on remand, the trial court should dismiss the interference with business relationship claim consistent with this opinion.

## BUSINESS DISPARAGEMENT AND DEFAMATION

The Counterclaim asserts a claim for business disparagement, and in a separate section, a claim for defamation. We discuss them together. The business disparagement claim references the previously described conduct and then contends Appellants "disseminated, or caused to be disseminated, false statements" and "engaged in the disparagement of the economic interests" of Appellees to third parties. The Counterclaim contends the statements were false, and Appellants acted knowingly and with malice.

Similarly, the defamation allegations contend that Appellants "intentionally published or caused to be published statements of fact" about Appellees to third parties. These statements are claimed to have injured Appellees' reputation and exposed Rascon to "public hatred, contempt or ridicule, financial injury," or impeached "his honesty, integrity, or reputation." The amended Counterclaim contends the statements were false, made with malice, and that the injury to Rascon is presumed.

### Does the TCPA Apply?

The business disparagement and defamation claims fall within the TCPA. The allegations hinge on communications to third parties about Appellees' fidelity in paying bills, which as we have previously explained, implicates the exercise of free speech as uniquely defined by the TCPA.

### Is There Clear and Specific Evidence of a Prima Facie Case?

Business disparagement describes a derogatory publication about a person's economic or commercial interests. *In re Lipsky*, 460 S.W.3d at 591. Although similar, the tort of defamation

25

protects the personal reputation of an injured party, whether that party is an individual or a business entity. *Id*. at 591, 593.

"To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Id*. at 592, *quoting Forbes Inc. v. Granada Biosciences, Inc*., 124 S.W.3d 167, 170 (Tex. 2003). The special damages for a business disparagement claim are synonymous with economic damages as distinguished from general damages. *Id., citing Hancock v. Variyam*, 400 S.W.3d 59, 65 (Tex. 2013).

To prevail on a defamation claim, a plaintiff must prove: (1) the publication of a false statement of fact to a third party; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages. *D Magazine Partners, L.P. v. Rosenthal*, ____ S.W.3d ____, ____, 2017 WL 1041234 (Tex. 2017), *citing Lipsky*, 460 S.W.3d at 593. General damages are recoverable under a defamation claim for non-economic losses, such as loss of reputation and mental anguish. *Id*. Additionally, if a statement is defamatory per se, then damages are presumed. *Id*.

*Injurious Falsehood*

Appellees failed to present clear and specific evidence of special damages to support their business disparagement claim. Rascon's affidavit generally contends that IAS and Next Level were unable to obtain credit and conduct business. His general assertions in this regard were conclusory. And "general averments of direct economic losses and lost profits" do not satisfy the clear and specific evidence standard under the Act without "specific facts illustrating how [a defendant's] alleged remarks about [a plaintiff's] activities actually caused such losses." *In re Lipsky*, 460 S.W.3d at 592-93.

26

As we noted before, Rascon's affidavit never explained what business was transacted with two of the media entities mentioned in his affidavit (Telemundo and KTSM). Nor does he explain specifically what business was pursued with those media outlets, or how they fit into Appellees' business plan.[11] The other entity, Edwards Homes, suffers from the lack of specifics that we address elsewhere. Rascon concludes that he lost the business because of Appellants' statements, but he neither describes the relationship with any detail, or the basis for his conclusion that Edwards Home stopped doing business because of the alleged statement made to it. Without any detail as to specific clients, his affidavit is similar to that in *In re Lipsky*, where a business averred in general terms that it suffered "direct pecuniary and economic losses and costs, lost profits, loss of its reputation, and loss of goodwill in the communities in which it operates . . . in excess of three million dollars." *Id.* at 592. The court found the statement conclusory; "[b]are, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA." *Id.* at 592.

## *Defamation*

The defamation claim is based on statements that Appellees had a "bad reputation," owed Appellants "lots of money," was a "deadbeat," and told Edwards Homes that payments made to Appellees had been kept by them, and not used to pay their client's advertising bill with MVS. A statement is defamatory if the words tend to injure a person's reputation, exposing them to public hatred, contempt, ridicule, or financial injury, or if it tends to impeach the person's honesty, integrity, or virtue. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 73.001 (West 2017)(defining libel, the written form of defamation). To qualify as defamation, a statement should be derogatory, degrading, somewhat shocking, and contain elements of disgrace. *John Moore Servs.*, 441 S.W.3d

---

[11] Again, we note that we have found the specific dealings with Televisa over the Axa concert fall within the commercial speech exception, and the TCPA did not reach that specific claim.

27

at 356. By contrast, a communication that is merely unflattering, abusive, annoying, irksome, or embarrassing, or that only hurts a person's feelings, is not actionable. *Id.* We construe the statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement. *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987).

The first element requires a showing the defendant communicated false statements to third parties. "In a defamation case that implicates the [Act], pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist" a motion to dismiss under the Act. *Bedford v. Spassoff*, No. 16-0229, 2017 WL 2492005, at *2 (Tex. June 9, 2017). As to Telemundo, Rascon identifies a statement ("I was a 'deadbeat'") made in the first half of 2015 to a person, whom he only identifies by title. Concerning KTSM, he alleges that a "group" was told, "I owed MVS lots of money." He does not identify the group, when the statement was made, or discuss how he knows such a statement was made. As to Edwards Homes, he identifies neither the person to whom the statement was made, nor when the statement was made. He does not explain how he had any personal knowledge of the statement. Appellees did not meet their burden of meeting the first element of a defamation claim and on remand, the trial court should dismiss the defamation claim as it relates to any entity other than Televisa.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Rascon alleges a personal claim for intentional infliction of emotional distress. The allegation is based on submission of false invoices, the demand for payment on those invoices, and the statements made to "other media outlets." He alleges this conduct was "extreme and outrageous," was "intentional and committed with recklessness" and caused him severe emotional distress, bodily harm, and financial injury.

28

## Does the TCPA Apply?

Because the allegation specifically references the communications to third-party media outlets, we conclude the TCPA applies.

## Is There Clear and Specific Evidence of a Prima Facie Case?

To recover for intentional infliction of emotional distress, a plaintiff must prove (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Tiller v. McClure*, 121 S.W.3d 709, 713 (Tex. 2003)(per curiam), *citing Twyman v. Twyman*, 855 S.W.2d 619, 621-22 (Tex. 1993). Extreme and outrageous conduct is defined as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman*, 855 S.W.2d at 621, *quoting* Restatement (Second) of Torts § 46 cmt. d (Am. Law Inst. 1965). The fact that a defendant's conduct is tortious or otherwise wrongful does not render it extreme and outrageous. *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001). Nor does extreme and outrageous conduct include mere insults, indignities, threats, annoyances, or petty oppression. *Soto v. El Paso Natural Gas Co.*, 942 S.W.2d 671, 681 (Tex.App.--El Paso 1997, writ denied); *Horton v. Montgomery Ward & Co., Inc.,* 827 S.W.2d 361, 369 (Tex.App.--San Antonio 1992, writ denied), *quoting* Restatement (Second) of Torts § 46, cmt. d (Am. Law Inst. 1965). The tort is referred to as a "gap-filler," judicially created to allow recovery in "those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).

A court at the outset must make the initial determination of whether the conduct alleged was extreme and outrageous. *Tiller*, 121 S.W.3d at 713; *Wornick Co. v. Casas*, 856 S.W.2d 732,

29

734 (Tex. 1993). If reasonable minds could differ, a jury should then decide if the conduct was sufficiently extreme and outrageous to result in liability. *Tiller*, 121 S.W.3d at 713. Courts should consider the entire set of circumstances surrounding the conduct, such as the defendant's course of conduct, the context of the parties' relationship, whether the defendant knew the plaintiff was particularly susceptible to emotional distress, and the defendant's motive or intent. *See, e.g., GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 615 (Tex. 1999).

We conclude that Rascon has failed to present clear and specific evidence of at least two elements of the claim. First, the underlying conduct was not shown to be extreme and outrageous. Rascon failed to prove any conspiracy to intentionally fabricate invoices and then report them as unpaid to other third parties. At most, he has shown that the invoice upon which this suit was originally filed might be overstated.[12] While we might agree that reporting a disputed debt as unpaid could be negligent, we cannot conclude under these circumstances that it is extreme and outrageous. When the Texas Supreme Court recognized a cause of action for intentional infliction of emotional distress, it did so adopting the parameters of that tort described in the Restatement (Second) of Torts § 46(1)(Am. Law Inst. 1965). *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex. 1999). The comments to the Restatement provide two examples of debt collection efforts, one that meets the standard and one that does not. Comment e suggests that the extreme and

---

[12] Rascon's affidavit includes two MVS invoices as attachments. The first invoice, dated July 13, 2015, appears to be the invoice upon which the original lawsuit was based. The invoice reflects a number of unpaid charges from February of 2014 to October 2014. For each charge, there is a unique transaction number, followed by a transaction date, a corresponding contract number, and the net amount due. The total unpaid charges show as $56,039.70. The second invoice is dated March 1, 2016, and appears to be a more comprehensive reconciliation of the account, showing not only the unpaid charges on the July invoice, but other charges that were incurred and paid. Comparing the two invoices at least raises an inference that when ten specific account charges were paid, they were re-booked as debits. For instance, the invoice sued upon reflects that on contract # 25001, a $1,290.20 charge was incurred on 7/31/2014 and was not paid. Appellees point out that under the same contract number, an identical amount ($1,290.20) was incurred on 01/26/2014 and was *paid* on 7/31/2014. A similar pattern is reflected in nine other account numbers, all showing that on 7/31/2014 each incurred a charge in the exact amount for which a payment was made on the same date. We do not discount that upon full discovery that there might be an appropriate explanation for why a series of payments on a single date are also reflected as corresponding debits. But even as it is, this oddity proves nothing more than a possible bookkeeper's error.

30

outrageous standard is met by a creditor who collectively does all these things: forwards threatening letters; reviles the debtor as a deadbeat, dishonest, and a criminal; repeatedly threatens lawsuits that are never filed; threatens garnishment of wages; threatens to have the debtor fired; and makes physical threats. *See id.,* cmt. e, illus. 7. Conversely, a creditor who calls the debtors names such as a deadbeat, speaks in a rude and insolent manner, has not met the standard. *Id.,* cmt. f, illus. 8. Appellants' conduct more closely fits the later illustration. In light of how narrowly our courts view this tort, we conclude that the only conduct clearly and specifically shown is not extreme and outrageous. *See Weisberg v. London*, No. 13-02-659-CV, 2004 WL 1932748, at *10-11 (Tex.App.--Corpus Christi Aug. 31, 2004, no pet.)(mem. op.)(reporting former church member to new church as not in "good standing" which was a code word for a "deadbeat" was not extreme or outrageous); *see also Hersh v. Tatum*, No. 16-0096, 2017 WL 2839873, at *4 (Tex. June 30, 2017)(defendant encouraging reporter to write a column about young man's suicide while the family was still mourning and vulnerable failed to meet the standard); *Texas Farm Bureau Mut. Ins. Companies v. Sears*, 84 S.W.3d 604, 612 (Tex. 2002)(alleged negligent investigation by employer, that led employer to report investigation results to various federal and state enforcement agencies, was not extreme and outrageous); *Brewerton,* 997 S.W.2d at 216 (terminating employee, even with added issue of negative comments, restricting free speech rights, and assigning excessive workload did not meet the standard).

We also agree that Rascon failed to present sufficient evidence to show his emotional distress was severe. His affidavit states:

> These statements were made to cause me emotional distress. To be raked through the mud to the business community with not only lies but invoices that are faked and that violate the criminal law is extreme and outrageous. I have suffered severe emotional distress because of these acts such that I have had severe scarring, anxiety attacks, problems with my digestion, and sleeplessness.

31

*Severe* emotional distress is meant to be something more than just emotional distress. Rascon was required to bring forth clear and specific evidence that he suffered distress so severe that no reasonable person could be expected to endure it. *See GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 618 (Tex. 1999). Generally, a plaintiff must show more than mere worry, anxiety, vexation, embarrassment, or anger. *Deaver v. Desai*, 483 S.W.3d 668, 677 (Tex.App.--Houston [14th Dist.] 2015, no pet.)(pleading claiming "shame, embarrassment, humiliation, and mental anguish" did not establish clear and specific evidence of emotional distress); *Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 454 (Tex.App.--Dallas 2002, no pet.)(feeling "intense embarrassment" "humiliated" and "frustrated" because of inaccurate credit report failed to meet standard for compensable harm).

Rascon mentions loss of sleep, problems with digestion, and anxiety attacks, but provides no meaningful details as to the frequency or severity of what he is describing. In *Union Pacific R.R. Co. v. Loa*, 153 S.W.3d 162, 171-72 (Tex.App.--El Paso 2004, no pet.), we found similar general references to feeling nervous, stressed, withdrawn, and suffering a loss of happiness insufficient to meet the severe emotional stress threshold. The plaintiff in *Loa*, like Rascon, presented no evidence of seeking counseling or medical treatment. *See also Regan v. Lee*, 879 S.W.2d 133, 136–37 (Tex.App.--Houston [14th Dist.] 1994, no pet.)(testimony that plaintiff was "very angry," humiliated, and suffered from depression, but who did not seek professional help failed to meet damages burden). On remand, the trial court should dismiss the intentional infliction of emotional distress claim.

## BREACH OF THE SETTLEMENT AGREEMENT

Lastly, Appellees call our attention to the supplemental claim that they filed. In that claim, they asserted the Southwestern defendants breached a non-disparagement clause in a settlement agreement entered into by the Southwest defendants and Rascon (but not Appellants). Appellees

contend that the Southwest defendants recruited MVS and Saturno as agents to disseminate disparaging statements in violation of the agreement. We address MVS and Saturno's potential direct liability for the disparaging statements elsewhere. Even as agents of the Southwest defendants, Appellants could not be liable on a contract they never signed. *C & A Investments, Inc. v. Bonnet Resources Corp.*, 959 S.W.2d 258, 262 (Tex.App.--Dallas 1997, writ denied)(agent who negotiated loan agreement could not be liable for agreement it was not a party to and did not sign); *Bernard Johnson, Inc. v. Continental Constructors, Inc.*, 630 S.W.2d 365, 369 (Tex.App.--Austin 1982, writ ref'd n.r.e.)("As a general rule, a suit for breach of contract may not be maintained against a person who is not a party to the contract, particularly a non-party who is assigned duties by the terms of the contract.").

Appellees put another spin on this argument, however, contending that as agents of the Southwest defendants, Appellants have "waived" their TCPA rights. The waiver they point to is from an excerpt of the settlement agreement between the Southwestern defendants and Rascon where each purportedly agreed not to "directly or indirectly defame, disparage, 'bad mouth', or otherwise criticize" each other. Nonetheless, because Appellants were not signatories to this agreement, it is not clear how they could have intentionally relinquished a known right, which is a general predicate for any waiver claim. *See Ulico Casualty Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008)("Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right.").

Moreover, an agency relationship is a consensual agreement between the principal and the agent. *Reliant Energy Services, Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 782-83 (Tex.App.--Houston [1st Dist.] 2011, no pet.)(agency is a consensual relationship between two parties "by which one party acts on behalf of the other, subject to the other's control"). In the context of this dispute, the agreement that the supplemental petition alleges is no more than

conspiracy dressed up in breach of contract language. We have already concluded that Appellees failed to present any clear and specific evidence of the existence of that agreement. For the same reasons discussed under the conspiracy claim, we remand it to be dismissed, to the extent it seeks to assert a breach of contract claim against Appellants under the settlement agreement.

## CONCLUSION

We reverse and remand the case to the trial court with instructions to dismiss the following claims: conspiracy, fraud (but only as noted in our discussion above), interference with business relations, business disparagement, defamation, intentional infliction of emotional distress, and breach of settlement agreement, as those claims relate to MVS and Manuel Saturno. The Southwestern defendants did not file a TCPA motion and our holding here does not include the claims filed against them. Nor does our holding extend to any of the aforementioned claims against MVS and Manuel Saturno limited to the factual allegations pertaining to Televisa and the Axa concert.

October 11, 2017

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

34