

# Fourth Court of Appeals

## San Antonio, Texas

### OPINION

No. 04-14-00018-CV

Damien **HERRERA** and Blaine Castle,
Appellants

v.

Judy **STAHL** and Sue Hensley,
Appellees

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-05750
Honorable Michael E. Mery, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice
Concurring Opinion by:  Patricia O. Alvarez, Justice

Sitting:       Sandee Bryan Marion, Justice
               Marialyn Barnard, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  July 16, 2014

AFFIRMED

The parties are all condominium owners and members of the Chesapeake Condominium

Owners Association (the "Association").  Damien Herrera is the Association's president, and

Blaine Castle is the Association's secretary.  Judy Stahl and Sue Hensley (collectively, "plaintiffs")

originally sued only the Association for breach of contract, breach of fiduciary duty, and violations

of the Texas Business Organizations Code.  Plaintiffs later amended their petition to add Herrera

and Castle (collectively, "defendants") as defendants in their individual capacity.[1] Plaintiffs added a negligence claim against the Association and Herrera, and asserted fraud and defamation claims against the defendants. The defendants each moved to dismiss the defamation claims pursuant to the Texas Citizens' Participation Act ("the Act"). Following a non-evidentiary hearing, the trial court took the matter under advisement, and later denied the motions to dismiss. This interlocutory appeal by the defendants ensued.

## DISCUSSION

The Act recognizes both the need to protect those filing meritorious defamation claims and the need to punish or deter, through the assessment of attorney's fees and sanctions, those who abuse this tort action to silence others who otherwise have a constitutional right to exercise certain rights. *Whisenhunt v. Lippincott*, 416 S.W.3d 686, 696 (Tex. App.—Texarkana 2013, pet. filed). The Texas Legislature enacted the Act "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 (West Supp. 2014). To achieve these ends, the Legislature provided that if a legal action, such as a defamation claim, is brought in response to a person's exercise of the right of free speech, the right to petition, or the right of association, that person may move to dismiss the action. *Id.* § 27.003(a). The movant bears the initial burden to show by a preponderance of the evidence that the action "is based on, relates to, or is in response to the [movant's] exercise" of certain rights. *Id.* § 27.005(b). If the movant satisfies this initial burden, the burden then shifts to the nonmovant (the defamation-plaintiff), and the trial court is required to dismiss the legal action unless the non-

---

[1] Plaintiffs also added Betty Kies, the condominium property manager, as a defendant. Plaintiffs raised a defamation claim against Kies, but she is not a party to this appeal.

movant "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). In determining whether a legal action should be dismissed, the trial court "shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability . . . is based." *Id.* § 27.006(a).

The Act does not define "preponderance of the evidence." When construing statutory language, our primary objective is to ascertain and give effect to the Legislature's intent. TEX. GOV'T CODE ANN. § 312.005 (West 2013). "Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." *Id.* § 311.011(b). The particular meaning of "preponderance of the evidence" in both civil and criminal cases means the greater weight and degree of credible evidence that would create a reasonable belief in the truth of the claim. *See Rickels v. State*, 202 S.W.3d 759, 763-64 (Tex. Crim. App. 2006); *see also Murff v. Pass*, 249 S.W.3d 407, 409 n.1 (Tex. 2008) (per curiam); *R&R Contractors v. Torres*, 88 S.W.3d 685, 695 n.12 (Tex. App.—Corpus Christi 2002, no pet.); *The Upjohn Co. v. Freeman*, 847 S.W.2d 589, 591 (Tex. App.—Dallas 1992, no writ). Therefore, the movant bears the initial burden to show by the greater weight and degree of credible evidence that the action "is based on, relates to, or is in response to the [movant's] exercise" of certain rights. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b).

We review de novo a trial court's ruling on a motion to dismiss under the Act. *See Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 725-27 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Accordingly, we review de novo (1) whether the movant satisfied the initial burden imposed by section 27.005(b), and, if so, (2) whether the nonmovant satisfied the burden imposed by section 27.005(c). In reviewing the trial court's determination of whether a legal action should be dismissed, we consider the pleadings and supporting and opposing affidavits stating the facts

on which the liability is based. *Accord* TEX. CIV. PRAC. & REM. CODE § 27.006(a) (requiring the trial court to consider these items).

### A.        Plaintiffs' Defamation Claims

In their petition, plaintiffs alleged the following specific defamatory statements by Herrera: (1) he called Stahl a "bitch," (2) he told Association residents plaintiffs were "crazy," and "they have no lives" other than bothering the Association and Association board members; (3) he called the San Antonio Police Department ("SAPD") on Stahl when she was looking for feral cats outside Herrera's residence and reported she was engaged in illegal and/or criminal activity, thus further attempting to portray her as unstable; (4) he sent emails to other residents ridiculing plaintiffs' efforts to retrieve records relevant to the lawsuit from a trash bin after Kies attempted to dispose of the records and after receiving a spoliation letter from plaintiffs' attorney; and (5) he told Stahl at a board meeting in front of other residents not to "get [her] panties in a wad," thus embarrassing her in public.

Plaintiffs alleged the following specific defamatory statements by Castle: (1) he told Association residents plaintiffs were "crazy," and "they have no lives" other than bothering the Association and Association board members; (2) he called the SAPD on Hensley's husband after having a verbal "engagement" with plaintiffs and Hensley's husband, and reported they were engaged in illegal and/or criminal activity; (3) he sent emails to other residents ridiculing plaintiffs' efforts to retrieve records relevant to the lawsuit from a trash bin after Kies attempted to dispose of the records; and (4) a password used on a Quickbook CD was "2bitches."

In support of their response to defendants' motions to dismiss, plaintiffs attached various affidavits. Ernest Garcia, a resident of Chesapeake Condominiums, stated that one day he and Herrera were talking outside Garcia's condominium about how to save money and about upkeep of the condominiums. During their conversation, Garcia noticed someone under the stairs taking

pictures. Garcia said "who's that" and "what are they doing?" According to Garcia, Herrera "said it was that crazy, stupid bitch. Then he took out his cell phone and took a picture of Mrs. Judy Stahl." In Stahl's affidavit, she stated that during a July 2013 Association meeting, one board member continually interrupted her, and Castle told her that her three minutes were up even though the board member spoke longer than she did. When she told Herrera she was not being allowed her three minutes and was being treated differently than other speakers, Herrera told her "Don't get your panties in a wad." In Hensley's affidavit, she alleged Herrera told her she did not "know what [she was] talking about" during an Association meeting; Castle yelled obscenities at her and Stahl; she found signs on the Association office door and in the mail room calling her and Stahl "fools in Proverbs Biblical quote[s], calling us information thieves, and calling us liars in pool notification 'rumors about the pool not being safe.'" Hensley also alleged Herrera sent emails to other residents "ridiculing our efforts to retrieve . . . relevant documents [from a dumpster]."

## B.    Herrera's Motion to Dismiss

In his motion to dismiss, Herrera asserted plaintiff's action was in response to the exercise of his right of association, free speech, and/or to petition because his statements were made during duly called Association meetings, to the SAPD, and to zoning administrators employed by the City of San Antonio. He alleged all statements were "communications" made in connection with a "matter of public concern" for the purpose of collectively expressing, promoting, or defending the common interest of the Association's membership.

In support of his motion to dismiss, Herrera attached his affidavit[2] in which he states as follows with regard to his comments to or about the plaintiffs:

---

[2] Herrera also attached to his motion to dismiss the Association's Certificate of Incorporation; the Association's Articles of Incorporation; a chart showing various information, such as square footage, about each condominium unit; and The City of San Antonio's condemnation petition.

I have never "defamed" anyone, including the Plaintiffs. I have, however, taken issue and criticized them for the tactics that they have employed in trying to gain maximum exposure for their legal claims and purposefully imposing a financial strain on the Association, which has caused many capital improvement projects to be postponed indefinitely. Any comments that I have made about the Plaintiffs have been during Association meetings, with public officials and administrators, or otherwise in the course and scope of my service as an Association officer. I am an officer of the Association by virtue of my right to freely associate with other like-minded Association members and citizens for the purpose of petitioning the City or other governmental entity, responding to the legal action initiated by the City and by the Plaintiffs, protecting the Association's environmental, economic and community well-being, and other similar interests. Any comments that I have made about the Plaintiffs have been truthful.

On appeal, Herrera asserts he satisfied his initial burden because he produced "probative evidence" that he "associated" within the meaning of the Act and "probative evidence" that he "petitioned" within the meaning of the Act; and any alleged defamatory statements are protected under the common law judicial privilege.[3]

The Act defines "[e]xercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." *Id.* § 27.001(2). Herrera contends his statements were made by elected officers (himself and Castle) between themselves and with Association members for the purpose of collectively expressing, promoting, or defending the common interests of the Association's membership. There is no dispute in this appeal that the Association is a group of "individuals who join together to collectively express, promote, pursue, or defend [the] common interests [of the Chesapeake Condominium owners]." *Id.* However, in his motion to dismiss and his affidavit, Herrera does not explain the specific "common interests" of the Association he was expressing, promoting, or

---

[3] The trial court's order denying both motions to dismiss states the defendants did not show "by a preponderance of the evidence that the legal actions are based on, relate to, or are in response to the parties' exercise of free speech, the right to petition, or the right of association." On appeal, Herrera does not challenge the trial court's ruling with regard to free speech. Therefore, we must affirm the trial court's denial of Herrera's motion to dismiss on that basis. Also, Herrera did not move for dismissal based on judicial privilege; therefore, that issue is not preserved for our review.

defending when he made the statements alleged by the plaintiffs, or how any of the alleged statements related to a specific "common interest." Nor does he provide any underlying details in support of his contentions.[4]

The Act defines the "[e]xercise of the right to petition" to mean, among other things, "a communication in or pertaining to . . . a judicial proceeding . . . ." *Id.* § 27.001(4)(A)(i). On appeal, Herrera contends his right to petition was implicated because of communications he made during a "judicial proceeding," i.e., during a Special Commissioner's Hearing on a condemnation proceeding initiated by the City of San Antonio in which the City was attempting to condemn a portion of the Association's property for incorporation into a City-owned greenbelt. Assuming without deciding that the Special Commissioner's Hearing was a "judicial proceeding," the statements the plaintiffs alleged Herrera made to or about them were not made at the Commissioner's Hearing, but were, instead, made to Association members when he reported on the status of the hearing. Therefore, the alleged statements were not "communication[s] in" a judicial proceeding. Nor were they "communication[s] pertaining to" a judicial proceeding. Finally, in his motion to dismiss and his affidavit, Herrera does not provide any underlying details in support of his contentions.

We conclude Herrera introduced only conclusory evidence[5] that plaintiffs' defamation action is based on, relates to, or is in response to Herrera's exercise of his right of association or

---

[4] On appeal, Herrera references the alleged defamatory statements as "included on police reports filed with the" SAPD. Other than this brief reference, he provides no underlying details or substantive argument, and he has not provided this court with a copy of the police report. Therefore, any contention that statements in the police report are within the scope of the Act is not preserved for our review.

[5] "A motion to dismiss a legal action under this section must be filed not later than the 60th day after the date of service of the legal action." TEX. CIV. PRAC. & REM. CODE § 27.003(b). However, "the court may extend the time to file a motion [to dismiss] on a showing of good cause." *Id.* The record does not indicate defendants asked for an extension of time in which to file their motions to dismiss. Also, "[o]n a motion by a party or on the court's own motion and on a showing of good cause, the court may allow specified and limited discovery relevant to the motion." *Id.* § 27.006(b). There is no indication in the record that either party requested time for discovery.

his right to petition. Conclusory statements are not probative evidence. *Fitzmaurice v. Jones*, 417 S.W.3d 627, 632 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (in context of whether defamation-plaintiff established prima facie case); *see also City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009) (conclusory expert opinions not probative evidence, regardless of whether an objection is made); *Lefton v. Griffith*, 136 S.W.3d 271, 277 (Tex. App.—San Antonio 2004, no pet.) (conclusory evidence of damages legally insufficient to support default judgment when damages are unliquidated). Therefore, we hold the trial court did not err in denying Herrera's motion to dismiss because he did not satisfy his initial burden.

## C. Castle's Motion to Dismiss

In his motion to dismiss, Castle asserted plaintiff's action was in response to the exercise of his right of association, free speech, and/or to petition because his statements were made during duly called Association meetings, to the SAPD, and to zoning administrators employed by the City of San Antonio. He alleged all statements were "communications" made in connection with a "matter of public concern" for the purpose of collectively expressing, promoting, or defending the common interest of the Association's membership. On appeal, Castle asserts he satisfied his initial burden because he produced "probative evidence" that he "associated" within the meaning of the Act and "probative evidence" that he "petitioned" within the meaning of the Act; and any alleged defamatory statements are protected under the common law judicial privilege.[6]

In support of his motion to dismiss, Castle attached his affidavit[7] in which he states as follows with regard to his comments to or about the plaintiffs:

---

[6] On appeal, Castle does not challenge the trial court's ruling with regard to free speech. Therefore, we must affirm the trial court's denial of Castle's motion to dismiss on that basis. Also, Castle did not move for dismissal based on judicial privilege; therefore, that issue is not reserved for our review.

[7] Castle also attached to his motion to dismiss the Association's Certificate of Incorporation; the Association's Articles of Incorporation; and a chart showing various information, such as square footage, about each condominium unit.

I have never "defamed" anyone, including the Plaintiffs. I have, however, taken issue and criticized them for the tactics that they have employed in trying to gain maximum exposure for their legal claims and pressure the Board into capitulating. Any comments that I have made about the Plaintiffs have been during Association meetings, with public officials and administrators, or otherwise in the course and scope of my service as an Association officer. I am an officer of the Association by virtue of my right to freely associate with other like-minded citizens for the purpose of petitioning the City or other governmental entity, responding to the legal action initiated by the City and by the Plaintiffs, ensuring the health and safety of our Association members, [and] protecting the Association's environmental, economic and community well-being, and other similar interests.

On appeal, Castle makes the same argument as did Herrera with regard to his right of association. In his motion to dismiss and his affidavit, Castle does not explain the specific "common interests" of the Association he was expressing, promoting, or defending when he made the statements alleged by the plaintiffs, or how the alleged statements related to a specific "common interest." Nor does he provide any underlying details in support of his contentions.[8]

Castle also makes the same argument as did Herrera with regard to his right to petition. Again, assuming without deciding that the Special Commissioner's Hearing was a "judicial proceeding," the statements plaintiffs alleged Castle made to or about them were not made at the Commissioner's Hearing, but were, instead, made to Association members when he reported on the status of the hearing. Therefore, the alleged statements were not "communication[s] in" a judicial proceeding. Nor were they "communication[s] pertaining to" a judicial proceeding. Finally, in his motion to dismiss and his affidavit, Castle does not provide any underlying details in support of his contentions.

---

[8] On appeal, Castle references the alleged defamatory statements as "included on police reports filed with the" SAPD. Other than this brief reference, he provides no underlying details or substantive argument, and he has not provided this court with a copy of the police report. Therefore, any contention that statements in the police report are within the scope of the Act is not preserved for our review.

For the same reasons stated above, we conclude Castle introduced only conclusory evidence that plaintiffs' action is based on, relates to, or is in response to Castle's exercise of his right of association or his right to petition. Therefore, because he did not satisfy his initial burden, we hold the trial court did not err in denying Castle's motion to dismiss.

## CONCLUSION

On this record, we conclude the trial court did not err in denying Herrera's and Castle's motions to dismiss. Because they did not satisfy their initial burden, we do not address whether Stahl and Hensley satisfied their burden to "establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question."[9] TEX. CIV. PRAC. & REM. CODE § 27.005(c). Accordingly, we affirm the trial court's Order Denying Defendants' Motions to Dismiss.

Sandee Bryan Marion, Justice

---

[9] Therefore, our opinion should not be read as commenting on the merits of the plaintiffs' defamation claims.