

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00621-CV

**HOLT TEXAS, LTD.** d/b/a Holt Cat and d/b/a Holt Rental Services,
Appellant

v.

**M&M CRUSHED STONE PRODUCTS, INC.**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-CI-07186
Honorable Antonia Arteaga, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Irene Rios, Justice

Delivered and Filed:  August 22, 2018

REVERSED AND RENDERED; CAUSE REMANDED

Holt Texas, Ltd. d/b/a Holt Cat and d/b/a Holt Rental Services appeals the trial court's

order denying its motion to dismiss filed pursuant to the Texas Citizens Participation Act also

known as the anti-SLAPP statute.  Holt contends the trial court erred in denying its motion because

the tortious interference counterclaim asserted by appellee M&M Crushed Stone Products, Inc.

against it was based on, related to, or was in response to Holt's right of free speech, right to petition,

or right of association.  Holt further contends M&M failed to establish by clear and specific

evidence a prima facie case for each essential element of its tortious interference counterclaim.

We reverse the trial court's order, dismiss the tortious interference counterclaim against Holt,[1] and remand the cause for further proceedings.

BACKGROUND

In April of 2017, Holt sued M&M alleging claims on a sworn account and for breach of contract and asserting M&M owed Holt $632,960.41 for "goods, wares, merchandise, services and repairs" Holt provided to M&M. In July of 2017, M&M filed its original counterclaims against Holt which included a tortious interference with prospective business relations claim. Only the tortious interference with prospective business relations claim is the subject of this accelerated appeal.

In its counterclaims, M&M alleged it entered into rental/purchase agreements with Holt for services, parts, and repairs from 2012 to 2016, which agreements included equipment protection plan warranties and maintenance agreements. During the course of these agreements, M&M alleged Holt failed to: (1) provide equipment in working condition; (2) perform services on equipment in a good and workmanlike manner; (3) provide accurate invoices and statements; (4) comply with repair and maintenance obligations; (5) perform repair services properly; and (6) provide equipment in good and working order. M&M's pleadings specifically detail these alleged failures with regard to several different pieces of equipment.

M&M further alleged it applied for a working capital loan from CAT Financial during the second quarter of 2017, which M&M expected would be approved because CAT Financial had provided prior equipment loans to M&M in excess of $1,400,000.00. In pleading its tortious interference with prospective business relations claim, M&M alleged:

> The formation of the contract between M&M Crushed Stone and Cat Financial was reasonably probable considering all the facts and circumstances related to the transaction. Holt had actual knowledge of the prospective business relation

---

[1] This dismissal does not affect M&M's other counterclaims that Holt did not challenge in its motion.

between M&M Crushed Stone and Cat Financial and intentionally interfered with that relationship. Holt's conduct was independently tortious or unlawful. Holt's interference proximately caused M&M Crushed Stone's injury and M&M Crushed Stone has suffered actual damage or loss.

As previously noted, Holt filed a motion to dismiss pursuant to the TCPA requesting the trial court to dismiss only M&M's tortious interference with prospective business relations counterclaim. Holt attached to its motion an affidavit from Roy Wahne, Holt's Southern Regional Credit Manager, and an affidavit from Terry Ludzenski, Holt's Director of Financial Services.

In Wahne's affidavit, he stated it is a common practice for him to give credit references relating to Holt's customers and to contact other vendors and suppliers of construction equipment to seek credit references for Holt's prospective customers. Wahne also stated he occasionally provides credit references to and requests credit references from Caterpillar Financial Services Corporation [CAT Financial], and "[t]he exchanging of credit references between companies is a common business practice in the construction industry." On or about May 2017, Wahne was contacted by CAT Financial's Territory Manager Manuel Esparrago asking for a credit reference on M&M because M&M was seeking to borrow money from CAT Financial. Wahne stated, "I informed Mr. Esparrago that M&M had an outstanding balance with Holt and that a lawsuit had been filed." "In the days following this brief inquiry," Wahne stated he again spoke with Esparrago and Ludzenski, Holt's Director of Financial Services, and "reiterated only that M&M had an outstanding balance with Holt and that a lawsuit had been filed."

In his affidavit, Ludzenski also stated providing and seeking credit references is a common practice, including exchanging credit references with CAT Financial. Ludzenski stated Esparrago also contacted him on or about May 2017 seeking a credit reference on M&M. Ludzenski further stated, "I informed Mr. Esparrago that M&M had an outstanding balance with Holt and that a lawsuit had been filed."

In its response to Holt's motion, M&M alleged it had worked with Holt to determine what charges were proper "[f]or nearly a year." M&M also alleged Holt was aware of its "severe invoicing problems" and, as a result of their ongoing discussions, Holt issued a series of credits for improper charges. In support of this allegation, M&M attached an internal email from a Holt sales representative to Holt's Quarry & Aggregates Industry Manager, dated April 21, 2016, in which the sales representative stated, "This could serve as a lesson to the company of why our invoicing structure/procedures are an embarrassment to the company." The email also acknowledged some credits would be owed due to billing errors. M&M's response further alleged, "Examining Holt's invoices to determine what amounts, if any, were actually due and owing was a tedious process — a process that was still underway when Holt abruptly filed suit on April 19, 2017." This same statement is contained in an affidavit from Grecia Martinez, M&M's chief administrative officer, which was attached to M&M's response.

With regard to CAT Financial, the response alleged M&M applied for a working capital loan from CAT Financial in April of 2017, and CAT Financial had previously approved and provided M&M several loans totaling more than $1,400,000.00. As evidence of its working relationship with CAT Financial, M&M attached an email string between Esparrago and Wahne dated July 29, 2016, in which Wahne requested a credit reference on M&M from CAT Financial. In his response, Esparrago described M&M as an "excellent customer," stated M&M made all payments on time, and rated the character of M&M's chief executive officer as an "A". In her affidavit, Martinez stated, "Based on its payment history and status and working relationship with CAT Financial, M&M Crushed Stone was confident that this application would be approved."

With regard to CAT Financial contacting Holt for a credit reference, M&M alleged:

> In May 2017, CAT Financial contacted Holt to obtain a credit reference on M&M Crushed Stone. With knowledge of the ongoing business relationship between M&M Crushed Stone and CAT Financial and of the prospective working

capital loan by CAT Financial to M&M Crushed Stone, Holt intentionally interfered with M&M Crushed Stone's relationship with CAT Financial by, among other things, failing to inform CAT Financial (1) of Holt's repeated issues with improper and inaccurate invoicing; (2) that Holt had internally acknowledged its problematic invoicing procedures and questioned why anyone would want to do business with Holt; (3) that Holt and M&M Crushed Stone had for months engaged in countless in-person meetings, telephone calls and emails to try to resolve the problems with the invoices Holt submitted to M&M Crushed Stone; or (4) Holt's repeated misrepresentation, improper invoicing, and failure to comply with contractual obligations and other duties on M&M Crushed Stone's account. Instead, Holt misrepresented to CAT Financial that M&M Crushed Stone's account was overdue. As a result of Holt's independently tortious or unlawful conduct, CAT Financial denied M&M Crushed Stone's application for a working capital loan, which proximately caused M&M Crushed Stone damages.

In her affidavit, Martinez stated, "Because of Holt's interference, CAT Financial denied M&M Crushed Stone's application for a working capital loan in May 2017."

After considering the motion, the response, and arguments made by counsel at a hearing, the trial court denied Holt's motion. Holt appeals.

## THE TEXAS CITIZENS PARTICIPATION ACT AND STANDARD OF REVIEW

"[T]he Texas Citizens Participation Act or TCPA protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). "The Act provides a special procedure for the expedited dismissal of such suits." *Id*. "Reviewing a TCPA motion to dismiss requires a three-step analysis." *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018).

When a defendant files a motion to dismiss under the TCPA, the defendant-movant has the initial burden to show by a preponderance of the evidence that the TCPA applies because the plaintiff's claim is based on, relates to, or is in response to the defendant-movant's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b) (West 2015); *Youngkin*, 546 S.W.3d at 679; *In re Lipsky*, 460 S.W.3d at 586-87. "If the movant is able to demonstrate that the plaintiff's claim implicates one of these

rights, the [next] step shifts the burden to the plaintiff to 'establish [ ] by clear and specific evidence a prima facie case for each essential element of the claim in question.'" *In re Lipsky*, 460 S.W.3d at 587 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c)). Finally, if the plaintiff meets its burden to establish a prima facie case, the trial court must still dismiss the claim if the defendant-movant "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d). We review the trial court's ruling on a TCPA motion to dismiss de novo. *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018); *Herrera v. Stahl*, 441 S.W.3d 739, 741 (Tex. App.—San Antonio 2014, no pet.).

In determining whether the plaintiff's claim should be dismissed, the court is to consider the pleadings and any supporting and opposing affidavits. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a); *see also Adams*, 547 S.W.3d at 892. Both the trial court and this court are required to consider the pleadings and evidence in the light most favorable to M&M. *See Mission Wrecker Serv., S.A., Inc. v. Assured Towing, Inc.*, No. 04-17-00006-CV, 2017 WL 3270358, at *1 (Tex. App.—San Antonio Aug. 2, 2017, pet. denied) (mem. op.); *see also Rio Grande H2O Guardian v. Robert Muller Family P'ship Ltd.*, No. 04-13-00441-CV, 2014 WL 309776, at *3 (Tex. App.—San Antonio Jan. 29, 2014, no pet.) (mem. op.) (noting "[u]nlike other types of cases where pleadings are not considered evidence, section 27.006 . . . expressly provides" that "we may consider the pleadings as evidence").

## APPLICABILITY OF THE TCPA

Holt asserts it met its burden to establish M&M's tortious interference counterclaim is based on, relates to, or is in response to Holt's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association. Because we hold Holt met its burden relating to its right

of free speech, we do not address whether the tortious interference claim also was based on, related to, or was in response to Holt's exercise of the other rights.

"The TCPA provides its own definition of 'exercise of the right of free speech,'" which "is not fully coextensive with the constitutional free-speech right protected by" the United States and Texas Constitutions. *Adams*, 547 S.W.3d at 892. The TCPA defines the "exercise of the right of free speech" to mean "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3) (West 2015). The TCPA further defines "matter of public concern" to include "an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id.* § 27.001(7).

"[W]hen construing the TCPA's 'right of free speech' prong, 'the plain language of the [TCPA] merely limits its scope to communications involving a public subject — not communications in public forum.'" *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (quoting *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015)). As a result, the TCPA encompasses both public and private communication. *Id.* "The TCPA does not require that the statements specifically 'mention' [public] concerns, nor does it require more than a 'tangential relationship' to the same; rather, TCPA applicability requires only that the defendant's statements are 'in connection with' 'issue[s] related to' health, safety, environmental, economic, and other identified matters of public concern chosen by the Legislature." *Id.* at 900.

Our analysis of whether Holt's communication was in connection with a matter of public concern is guided by our sister court's decision in *MVS Int'l Corp. v. Int'l Advertising Solutions, LLC*, 545 S.W.3d 180 (Tex. App.—El Paso 2017, no pet.). In *MVS Int'l Corp.*, MVS International Corp., which ran a radio station, sued two advertising agencies for amounts owed for unpaid advertising and other services. *Id.* at 186-87. The two advertising agencies filed counterclaims

and third party claims alleging MVS and its general manager and Southwest University and its principals developed a plan to injure the agencies' credit and business by falsifying charges owed and reporting the bad debt along with other disparaging comments to others in the industry who stopped doing business with the agencies. *Id*. at 187-88. Although the trial court denied MVS's TCPA motion to dismiss as moot, the El Paso court disagreed with that conclusion and addressed the merits of the motion. *Id*. at 186.

In addressing the applicability of the TCPA to one of the claims alleged by the agencies, the El Paso court noted the TCPA applies to communications made in connection with a matter of public concern which is defined to include a good, product, or service in the marketplace. *Id*. at 193. The El Paso court further noted the agencies sold a service to customers and "[b]y allegedly informing other media outlets that [the agencies] do not pay their accounts, Appellants made a communication 'in connection with' a 'service' in the relevant marketplace." *Id*. at 193-94. The El Paso court reasoned:

> Few would doubt an end consumer's right to communicate about the quality (or lack thereof) of businesses in the marketplace. Conversely, businesses have a corresponding right to communicate between themselves about customers, or potential customers. Otherwise, a bank could never inform other financial institutions that a putative borrower chronically defaults on loans, or a merchant could never warn other stores of serial shoplifters. To be sure, the information provided must be truthful, but this free flow of accurate information is essential to an efficient marketplace. Stripping away the falsity component of the allegation, Appellants here have done no more than warn other media outlets about potential customers who (allegedly) do not pay their accounts.

*Id*. at 194 (internal citations omitted). Specifically in regard to the agencies' claim for tortious interference with business relations, the El Paso court reasoned, "An essential allegation in the claim is a communication by Appellants to third parties about the [agencies'] fidelity in paying bills, which implicates the exercise of free speech." *Id*. at 199. Accordingly, the El Paso court

held the agencies' claims were based on, related to, or in response to the appellants' exercise of the right of free speech.

In the instant case, it is undisputed that M&M sells services to customers for crushing, screening, drilling, blasting, and mining aggregate, including stone. By responding to CAT Financial's request for a credit reference regarding M&M, Holt "made a communication 'in connection with' a 'service' in the relevant marketplace." *See id*. at 194. This is in keeping with the right businesses have "to communicate between themselves about customers." *Id*. In fact, the email exchange between Esparrago and Wahne in July of 2016, which M&M attached to its response, demonstrates credit references are routinely exchanged in the industry. Therefore, we hold Holt satisfied its initial burden of showing the TCPA is applicable to M&M's tortious interference counterclaim because that claim is based on, relates to, or is in response to Holt's exercise of the right of free speech. *See id*.; *see also Adams*, 547 S.W.3d at 895 (holding communication alleging company had "unpaid creditors" related to company's provision of services in the marketplace).

### PRIMA FACIE CASE

Because Holt met its initial burden, the burden shifted to M&M to establish by clear and specific evidence a prima facie case for each essential element of its tortious interference counterclaim.

"[A] prima facie case represents the minimum quantity of evidence necessary to support a rational inference that the allegation of fact is true." *Harwood v. Gilroy*, No. 04-16-00652-CV, 2017 WL 2791321, at *3 (Tex. App.—San Antonio June 28, 2017, no pet.) (mem. op.) (internal quotation omitted); *see also In re Lipsky*, 460 S.W.3d at 590 (same). The TCPA does not define the phrase "clear and specific evidence," which is the standard the plaintiff must meet in establishing a prima facie case for each essential element of the plaintiff's claims. *See In re Lipsky*,

460 S.W.3d at 590. The Texas Supreme Court, however, has held the standard requires more than mere notice pleadings and that the "plaintiff must provide enough detail to show the factual basis for its claim." *Id.* at 590-91. "Conclusory statements are not probative and accordingly will not suffice to establish a prima facie case." *Harwood*, 2017 WL 2791321, at *5.

To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013); *MVS Int'l Corp.*, 545 S.W.3d at 199; *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 168 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

In this case, neither M&M's pleadings nor the evidence it produced provide sufficient detail to establish the causation element of its tortious interference claim. Instead, both the allegations in its pleadings and Martinez's affidavit do nothing more than conclusively state CAT Financial denied the loan due to Holt's response to CAT Financial's request for a credit reference. *See In re Lipsky*, 460 S.W.3d at 590-91 ("[G]eneral allegations that merely recite the elements of a cause of action [] will not suffice."); *Hicks v. Grp. & Pension Adm'rs, Inc.*, 473 S.W.3d 518, 535 (Tex. App.—Corpus Christi 2015, no pet.) (allegation that defendants' interference caused third party not to award contract to plaintiff failed to establish prima facie case on essential element of causation in claim for tortious interference with prospective business relations). The fact that the credit reference occurred roughly contemporaneously with CAT Financial's decision does not

establish Holt's credit reference caused CAT Financial to decline the loan.  *See Schimmel v. McGregor*, 438 S.W.3d 847, 860-61 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ("The fact that Schimmel's alleged conduct occurred roughly contemporaneously with the City of Galveston's and the Department of Public Safety's consideration of whether to move forward with the purchases does not establish that Schimmel's conduct *caused* the governmental agencies to act as they did.") (emphasis in original); *see also Van Der Linden v. Khan*, 535 S.W.3d 179, 195 (Tex. App.—Fort Worth 2017, pet. filed) ("Given the temporal proximity between the Message and Sheldon's decision not to go forward with the contract, one might suspect that the Message factored into Sheldon's decision.  But just as conjecture, guess, or speculation will not survive a proximate cause sufficiency challenge in the summary judgment context, conjecture, guess, or speculation cannot survive 'clear and specific' scrutiny under chapter 27."); *MJS & Assocs., L.L.C. v. Master*, 501 S.W.3d 751, 758 (Tex. App.—Tyler 2016, pet. denied) ("The mere fact that LHC terminated its contract three days after MJS disclosed documents is not evidence of a causal link. Such a leap would be speculation.").  M&M did not present any affidavits from CAT Financial's representatives regarding the reason for its decision.  *See Khan*, 535 S.W.3d at 195 ("Khan did not offer affidavit testimony from Sheldon, the one person who personally knew why he refused to go forward with the alleged contract."); *see also Schimmel*, 438 S.W.3d at 860 (noting absence of any affidavits or admissible evidence from decision-maker).  Instead, the only evidence presented by M&M was an email from Martinez to Esparrago dated May 31, 2017, stating, "Based upon his last conversation with you, Patrick believes that CAT Financial has declined our application for a working capital line of credit.  Please provide M&M with a final **written** determination of our application for our files," and Esparrago's email response stating, "Unfortunately you are correct, at this time we are not able to provide a working capital LOC.  I tried to call Pat to discuss."  This evidence lacks any clear and specific details of the reasons for CAT Financial's decision.  Instead,

the pleading and evidence in this case are similar to the affidavit and petition presented by the agencies in *MVS Int'l Corp.* in support of their tortious interference claim. In that case, the affidavit stated a current customer stopped doing business with the agencies when told the agencies' principal failed to apply a payment towards the customer's account with MVS. *MVS Int'l Corp.*, 545 S.W.3d at 200. The El Paso court concluded, "The claim that [the customer] ceased doing business because of the alleged statement is also conclusory." *Id*. Similarly, because the pleadings and evidence produced by M&M on the causation element of its claim are conclusory and constitute no more than general allegations, we hold M&M failed to satisfy its burden to show by clear and specific evidence a prima facie case for its tortious interference counterclaim.

## CONCLUSION

Because the TCPA was applicable to M&M's counterclaim for tortious interference with prospective business relations but M&M did not establish by clear and specific evidence a prima facie case for that claim, the trial court erred in denying Holt's motion to dismiss. Therefore, we reverse the trial court's order and dismiss M&M's counterclaim for tortious interference with prospective business relations against Holt. The cause is remanded to the trial court to determine the amount Holt should be awarded under section 27.009(a) of the TCPA. *See Youngkin*, 546 S.W.3d at 683 (remanding for reconsideration of award under section 27.009(a)); *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) (holding TCPA requires an award of reasonable attorney's fees to the successful movant).

Sandee Bryan Marion, Chief Justice