

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| NAMAN HOWELL SMITH & LEE PLLC (NHSL) and DAVID ORTEGA, | § | No. 08-23-00324-CV |
| | § | Appeal from |
| Appellants, | | |
| | § | 37th Judicial District Court |
| v. | | |
| | § | of Bexar County, Texas |
| JOE A. GAMEZ LAW FIRM, P.C., and JOE A. GAMEZ, Individually, | § | (TC# 2021-CI-09973) |
| Appellees. | | |

**MEMORANDUM OPINION**

David Ortega and his law firm, Naman Howell Smith & Lee PLLC (collectively, Ortega),

appeal from the trial court's order denying his request to dismiss Joe A. Gamez and his law firm's

(collectively, Gamez) lawsuit under the Texas Citizens Participation Act (TCPA). Based on the

commercial-speech exemption, we affirm the trial court's order.[1]

## I. BACKGROUND

In August 2020, Alvin and Dorothy Lofton were involved in an automobile collision with

a vehicle driven by Ruben Trevino and owned by several Renegade Well Services corporate

entities. The Loftons suffered injuries and damage to their property. Four days after the collision,

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

the Loftons hired Gamez to sue Trevino and Renegade. They signed a contingency fee agreement with Gamez, in which they agreed to pay him a percentage of their recovery plus any advanced expenses. The agreement permitted the Loftons to terminate Gamez's services, but if the termination was without Gamez's consent, Gamez would retain his fee interest in their claims.

The Loftons allege various concerns with Gamez's representation, including that (1) during his representation, they "never met with any lawyers," (2) Gamez purportedly violated his fiduciary duties to the Loftons by withholding their personal injury protection coverage proceeds, and (3) even though Ms. Lofton was entitled to free medical care through the Veterans Administration, Gamez referred Ms. Lofton to a private practice surgeon (which effectively reduced the Loftons' recovery but increased the total damages).

On April 20, 2021, Ortega met with the Loftons. Ortega attested that a friend who knows the Loftons asked him if he could consult with the family regarding their concerns about Gamez's representation in their personal injury suit. Ortega agreed and charged the Loftons an hourly fee for his services. At their meeting, Ortega recommended several personal injury lawyers who could represent the Loftons if they decided to terminate Gamez, including Scott Westlund with Ketterman, Rowland & Westlund.

The Loftons agree that after they met with Ortega, they decided to terminate Gamez; however, they did not do so immediately. On June 23, 2021, Gamez filed the Loftons' original petition against Trevino and Renegade. On July 16, 2021, the Loftons terminated Gamez's representation. They then secured representation from Westlund, who resolved their case.

On May 18, 2023, Gamez filed this suit, asserting, among other things, a tortious interference claim against Ortega. Ortega filed a Rule 91a motion to dismiss based on attorney immunity. In response, Gamez amended his petition to clarify that Ortega's alleged tortious

2

interference occurred before the formation of an attorney-client relationship. After a hearing, the trial court denied the Rule 91a motion.

Ortega also filed a TCPA motion to dismiss. After a hearing, the trial court indicated it would grant the TCPA motion to dismiss and instructed Ortega to submit his attorney's fees request. Gamez filed a motion to reconsider, citing a Fourth Court of Appeals case involving the TCPA's commercial-speech exemption. *See Grable Grimshaw Mora, PLLC v. Christopher J. Weber, LLC*, No. 04-21-00064-CV, 2021 WL 3057500 (Tex. App.—San Antonio July 21, 2021, pet. denied) (mem. op.). After another hearing, the trial court denied the TCPA motion to dismiss, agreeing "that the commercial speech exemption applies" to the claims against Ortega.

Ortega brought this accelerated interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12).

## II. STANDARD OF REVIEW AND APPLICABLE LAW

The TCPA "protects speech on matters of public concern by authorizing courts to conduct an early and expedited review of the legal merit of claims that seek to stifle speech through the imposition of civil liability and damages." *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023). It "was designed to protect both a defendant's rights of speech, petition, and association and a claimant's right to pursue valid legal claims for injuries the defendant caused." *Montelongo v. Abrea*, 622 S.W.3d 290, 295 (Tex. 2021) (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.002). If a legal action is "based on or is in response to" the exercise of one of the statutorily enumerated rights, the defendant may seek dismissal under the TCPA. *Yu v. Koo*, 633 S.W.3d 712, 720 (Tex. App.—El Paso 2021, no pet.).

The TCPA provides a burden-shifting framework for dismissing a legal action to which it applies. *Montelongo*, 622 S.W.3d at 295 (citing *Castleman v. Internet Money Ltd.*, 546 S.W.3d

684, 686 (Tex. 2018) (per curiam)). First, the party seeking dismissal must show the TCPA applies by demonstrating that the nonmovant's suit is based on or in response to a party's exercise of the right of free speech, right to petition, or right of association. Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003(a), .005(b). If the movant fails to meet this initial burden, the motion to dismiss fails. *See id.* § 27.005(b). If the movant shows that the TCPA applies, the nonmovant must then establish by "clear and specific evidence" a prima facie case for each essential element of its claims. *Id.* § 27.005(c). Alternatively, the nonmovant may avoid its burden of demonstrating a prima facie case by showing that one of the TCPA's many exemptions apply. *RigUp, Inc. v. Sierra Hamilton, LLC*, 613 S.W.3d 177, 182 (Tex. App.—Austin 2020, no pet.); *see* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a). Finally, if the TCPA applies and the nonmovant establishes a prima facie case, the burden then shifts back to the movant to establish "an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d).

We review a trial court's ruling on a TCPA motion to dismiss de novo. *Herrera v. Stahl*, 441 S.W.3d 739, 741 (Tex. App.—San Antonio 2014, no pet.). In determining whether dismissal under the TCPA is proper, courts consider "the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a). The court views the pleadings and evidence in the light most favorable to the nonmovant. *Buzbee v. Canales*, 621 S.W.3d 802, 807 (Tex. App.—El Paso 2021, pet. denied).

## III.  ANALYSIS

In his sole issue on appeal, Ortega argues the trial court erred by denying his motion to dismiss Gamez's claims under the TCPA. Gamez responds that the trial court properly denied the

TCPA motion based on the commercial-speech exemption. Gamez further contends that even if the trial court erred in applying the commercial-speech exemption, it could have properly denied the motion on other grounds, including that Ortega failed to establish that the TCPA applies, Gamez proved a prima facie case for each challenged element of its tortious interference claim, and Ortega failed to establish an affirmative defense. Assuming without deciding that the TCPA applies here, we conclude that the trial court correctly denied the TCPA motion to dismiss based on the commercial-speech exemption. Thus, our analysis begins and ends there.[2]

The commercial-speech exemption provides that the TCPA does not apply to "a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer[.]" Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(2). The Texas Supreme Court has characterized the commercial-speech exemption as having four elements: "(1) the defendant was primarily engaged in the business of selling or leasing goods, (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides." *Castleman*, 546 S.W.3d at 688.

---

[2] *See* Tex. R. App. P. 47.1 (we "must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal"), Rule 47.4 ("If the issues are settled, the court should write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it.").

The burden of establishing all four elements of the commercial-speech exemption is on the nonmovant, i.e., the party claiming it applies. *RigUp*, 613 S.W.3d at 187. Ortega does not challenge the first and second elements; instead, he contends Gamez failed to meet his burden to demonstrate the third and fourth elements are satisfied. **Ant45**

### A. The alleged misconduct arose out of a commercial transaction involving the kind of services Ortega provides.

As to the third element, Ortega asserts that because he is not a plaintiff's personal injury attorney and did not even attempt to represent the Loftons in their personal injury case, Gamez cannot establish that "the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services [Ortega] provides." *Castleman*, 546 S.W.3d at 688. Ortega argues that he gave "limited ethical advice" to the Loftons, to whom he was connected by a mutual friend, and had no economic interest in the Loftons' decision regarding Gamez's termination because "he would not have received any less or more money depending on the advice he gave them." He maintains that he specifically declined to operate under a contingency fee agreement for any of the Loftons' claims. However, it is undisputed that Ortega charged the Loftons an hourly rate for his advice regarding Gamez's representation.[3]

At the trial court, Gamez argued that Ortega's own testimony demonstrates the conduct at issue arose from a commercial transaction involving the kind of services Ortega provides: legal services.[4] Gamez contended Ortega's practice area distinction is immaterial, citing *Grable* and arguing that it compels dismissal given its similar facts.

---

[3] Specifically, Ortega testified, "[a]fter meeting the Loftons, I agreed to represent them for specific advice (not in their underlying personal injury suit) and we agreed to an hourly fee for my legal service."

[4] In a footnote in his brief, Gamez argues the trial court erred in sustaining Ortega's objections to exhibits (pertaining to his State Bar and Super Lawyers profile indicating that his law practice includes personal injury) appended to his motion to dismiss. Alternatively, he urges this Court to take judicial notice of websites describing Ortega's law practice (without establishing how the websites meet the requirements of the evidentiary rules governing judicial notice of

In *Grable*, a homeowner retained attorney Christopher Weber to represent her in a dispute with her homeowner's association. 2021 WL 3057500, at *1. After allegedly accruing about $80,000 in attorney's fees, Weber claimed that Brandon Grable and his law firm tortiously interfered with his contract with the homeowner after Grable substituted for Weber as the homeowner's counsel and settled her suit against the HOA. *Id.* Weber sued Grable, and Grable moved to dismiss under the TCPA. *Id.* The Fourth Court of Appeals agreed that Weber met his burden to establish each element of the commercial-speech exemption, noting that the pleadings establish Grable (1) is "an attorney that sells legal services," (2) he "was a lawyer engaged in selling legal services," (3) the allegedly wrongful conduct arose from Grable's provision of legal services to the homeowner, "which is inarguably a commercial transaction involving legal services which Grable and [his firm] provide," and (4) the homeowner—who "was a potential client who became an actual client for the legal services Grable and [his firm] provide"—was the intended audience for the alleged misconduct. *Id.* at *3–4.

Ortega maintains that *Grable* is inapplicable because Grable substituted in as counsel for Weber, and here, Westlund—not Ortega—took over as the Loftons' attorney in Gamez's place. Ortega emphasizes that he never sought to represent the Loftons in their personal injury suit.

But neither the statutory language nor the Fourth Court of Appeals' precedent—to which we must adhere in this transferred case—support such a narrow reading of the commercial-speech exemption's "goods or services" language. Indeed, Ortega's position that an attorney's practice area is controlling is inconsistent with the way in which several courts have construed legal services within the TCPA's commercial-speech exemption. *See, e.g.*, *Buzbee v. Terry & Thweatt,*

adjudicative facts). *See* Tex. R. Evid. 201. Because these exhibits do not bear on our analysis, we need not address Gamez's argument that the trial court abused its discretion in sustaining Ortega's objections, nor do we address Gamez's request that we take judicial notice of the exhibits.

*P.C.*, No. 01-20-00659-CV, 2022 WL 52637, at *7 (Tex. App.—Houston [1st Dist.] Jan. 6, 2022, pet. denied) (mem. op.) (characterizing services provided by attorney as "legal services"); *Kostura v. Judge*, 627 S.W.3d 380, 387–88 (Tex. App.—Amarillo 2021, pet. denied) (same); *Kassab v. Pohl*, 612 S.W.3d 571, 579 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (same); *Miller Weisbrod, L.L.P. v. Llamas-Soforo*, 511 S.W.3d 181, 191 (Tex. App.—El Paso 2014, no pet.) (same).

We also disagree with Ortega's position that the commercial-speech exemption does not apply here because he had no more to gain from the Loftons after their meeting. That is, Ortega maintains that it did not matter to him whether the Loftons maintained Gamez as their attorney in the personal injury suit or terminated his services because Ortega never sought to represent them in that suit. But that sidesteps the "commercial transaction" that took place when the Loftons paid Ortega an hourly rate for his legal services. Specifically, Ortega's alleged misconduct forming the basis for this suit occurred in exchange for a fee paid on an hourly basis by the Loftons and involved the kind of services that Ortega regularly provides in his profession. That aligns with the commercial-speech exemption's plain language that the "statement or conduct arises out of the sale . . . of . . . services . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer." Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(2). This interpretation of the TCPA's plain language is consistent with the way it has been construed—i.e., the commercial-speech exemption is not limited to speech or conduct intended to secure future transactions; it applies to present or completed commercial transactions. *See Hanna v. Williams*, 681 S.W.3d 416, 427 (Tex. App.—Austin 2023, pet. denied); *Kostura*, 627 S.W.3d at 389; *Round Table Physicians Group, PLLC v. Kilgore*, 607 S.W.3d 878, 886 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).

Ortega cites a California state court case interpreting the California commercial-speech statute and concluding it did not apply in similar circumstances as here. *See Taheri Law Group v. Evans*, 160 Cal. App. 4th 482 (2008). He urges that public policy considerations weigh in favor of adopting the same approach. The Amarillo Court of Appeals rejected a similar argument regarding *Taheri*, basing its conclusion on the differences between the California and Texas commercial-speech exemptions to the anti-SLAPP laws. *See Kostura*, 627 S.W.3d at 387–88. It noted that unlike California's law, "Texas law does not limit its commercial-speech exemption to statements or conduct made for the purpose of obtaining, promoting, or securing sales, leases, or commercial transactions." *Id.* at 388; *see also id.* at 388 n.4 (quoting the California commercial-speech exemption).

We agree that here, the question we must answer is "not whether public policy should limit the commercial-speech exemption to . . . proposed commercial transactions, but whether the statute's text imposes such a limitation." *Kostura*, 627 S.W.3d at 390. The Texas statute contains no such limiting language. *Id.*; *see* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(2). As the *Kostura* Court noted, "[t]he Legislature certainly knows how to exclude professional advice from its reach when it chooses to do so." 627 S.W.3d at 388. We too decline to construe Texas's commercial-speech exemption "with an interpretive gloss limiting the scope of services" as Ortega suggests. *Id.*

### B. The intended audience of the statements were actual clients of Ortega's for the kinds of services he provides.

As to the fourth element, Ortega contends he did not solicit the Loftons to represent them in their personal injury case, such that Gamez cannot establish the fourth *Castleman* element: that "the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides."

9

However, we hold Gamez established the fourth *Castleman* element because the intended audience of the communications were Ortega's actual clients for legal services. That is, the Loftons were the intended audience of Ortega's alleged misconduct by virtue of being both his actual clients and the direct recipients of the communications, as it is undisputed in the record that the Loftons paid an hourly fee for Ortega's advice. *See Hanna*, 681 S.W.3d at 427; *accord Grable*, 2021 WL3057500, at *4; *Molina Healthcare, Inc. v. State ex rel. Thurmond*, No. 03-20-00077-CV, 2020 WL 7233609, at *4 (Tex. App.—Austin Dec. 9, 2020, pet. denied) (mem. op.).

## IV. CONCLUSION

Because Gamez established each element of the exemption, the trial court correctly determined that the commercial-speech exemption applies and did not err in denying Ortega's motion.[5] We affirm the trial court's order denying Ortega's TCPA motion to dismiss.

LISA J. SOTO, Justice

July 29, 2024

Before Alley, C.J., Palafox, and Soto, JJ.

---

[5] Having concluded the TCPA does not apply to this suit, we need not consider whether Gamez established by clear and specific evidence each element of its claims or whether Ortega established any affirmative defense. *See* Tex. R. App. P. 47.1; *Kostura v. Judge*, 627 S.W.3d 380, 391 (Tex. App.—Amarillo 2021, pet. denied) ("Because attorney immunity is an affirmative defense, it is heard in a TCPA matter only after the plaintiff is required to present clear and specific evidence of each cause of action.").